[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 636 
Robbery; sentence: life imprisonment.
Around 11:30 a.m. on April 26, 1977, the prosecutrix, an employee of Photo-Hut in Dora, Alabama, received a telephone call from an unknown caller inquiring about employment. She gave the caller her name. Later that day around 3:15 p.m. she received a second call and was told that she was going to be robbed and if she cooperated no one would be hurt. She was told that someone was watching her and she had better do exactly as told or she would never see her husband or children again. Her life was also threatened. The caller informed the prosecutrix that he had a woman and her child held hostage. He allowed her to talk with the hostage, wherein the woman hysterically pled with the prosecutrix to do exactly as the caller demanded. (The appellant later admitted to the police that he had disguised his voice to sound like a woman.) The prosecutrix was told to take the money from the cash drawer, a camera, film and flashbulbs from the shop, and her portable television set and put them in her car. She was directed to disconnect her C.B. radio unit and place it in the car trunk.
The prosecutrix informed the caller that there was not enough gasoline in her car to drive to Birmingham. She was then told to stop at a particular service station, buy exactly $7 worth of gasoline and proceed immediately to the Greyhound Bus Terminal in Birmingham. Upon arrival, she was to park at a designated spot, keep the engine running, unlock the right front door, get out and stand beside the car, then reenter it and wait for a man to approach and get in. She did exactly as told.
The prosecutrix identified the voice of the caller as that of the appellant. She likewise identified the man who entered her car at the bus terminal as being the appellant. She testified that after the appellant entered her car, he told her that he had a gun in his pocket. He then pulled a knife, opened it, put it to her throat, and told her that he would hate to mess up her face if she did not do exactly as told. He told her to drive toward Atlanta, Georgia. However, a short distance past Irondale, Alabama, he ordered her to pull off the road onto another road leading into a secluded wooded area near a cemetery. There, the appellant forced the prosecutrix to pose nude for some photographs and forced her to perform the act of sodomy.
When the prosecutrix told the appellant that if she did not pick up her husband at 6:00 p.m. he would call the police, she was instructed to return to the Greyhound terminal. After arriving, the appellant left the car taking the camera, film, flashbulbs, and money with him. He was later arrested in Louisiana and transported back to Jefferson County where he was subsequently tried and convicted for robbery.
 I
Appellant contends that the "one-for-one" jury strike system in Jefferson County violates the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution and Article IV, § 105, of the Alabama Constitution. The "one-for-one" strike system is found in § 714, Vol. 14, Appendix, Code of Ala. 1940, Recompiled 1958. In counties of less than 400,000 population, the law provides for a "two-for-one" strike system in favor of the defendant pursuant to § 12-16-100, Code of Ala. 1975. *Page 637 
All statutes of a public, general, and permanent nature not included in the 1975 Code were repealed; however, local statutes, or acts applying to political subdivisions of the state on the basis of population were not repealed. Section1-1-10, Code of Ala. 1975. Thus, the "one-for-one" jury strike system in Jefferson County was not repealed by the 1975 Code, and we have consistently held for forty years that it is not unconstitutional. Liptroth v. State, Ala.Cr.App., 335 So.2d 683
(1976), cert. denied, Ala., 335 So.2d 688. Likewise, contrary to appellant's assertions, Peddycoart v. City of Birmingham, Ala., 354 So.2d 808 (1978), has no application here.Peddycoart, at p. 814, expressly states that it has only prospective application.
 II
The appellant contends the trial court erred in refusing his requested charge on the lesser included offense of larceny: "The Court charges the jury that an indictment for robbery also embraces the charge of larceny."
A defendant charged with robbery is not entitled to an instruction regarding the lesser included offense of larceny where the only reasonable conclusion from the evidence is that the defendant is guilty of robbery or no crime at all. Turnerv. State, Ala.Cr.App., 356 So.2d 235, cert. denied, Ala.,356 So.2d 237 (1978); Impson v. State, Ala.Cr.App., 331 So.2d 837
(1976).
The appellant, testifying in his own behalf, emphatically denied accompanying the victim anywhere except to the bus depot cafeteria. He denied threatening her, placing her in fear, or robbing her. Yet, appellant asserts, for the first time on appeal, that the essential element of fear was absent when the property was removed from the prosecutrix. He in effect contends that he did not commit the crime; however, if he did, it was larceny only. On the other hand, the prosecutrix testified that she followed the appellant's instructions because of fear of harm to her husband and children, the alleged hostages, and to herself. On cross-examination, conducted by the appellant himself, the victim clearly stated that she feared bodily harm to herself.
A defendant is likewise not entitled to charges on lesser included offenses when he denied committing the crime itself.Parker v. State, Ala.Cr.App., 337 So.2d 1378 (1976). We therefore conclude that the trial court did not err in refusing the appellant's requested charge on the lesser included offense of larceny.
 III
The appellant claims that his statement given to police on June 15, 1977, was inadmissible due to promises made by the interrogating officer in two telephone conversations with the appellant some six weeks prior to the interrogation in question. The two telephone conversations in question took place one day after the robbery. The appellant telephoned Officer Albert Wallace of the Birmingham Police Department and posed as an attorney from Washington, D.C., supposedly representing the appellant. The appellant then discussed the robbery with Officer Wallace on behalf of his supposed client.
Officer Wallace testified that at the time of the telephone conversations he did not know the identity of the caller other than the fictitious name given to him by the appellant. Further, although Wallace thought it "a little bit unusual" for a person to call about working out a deal in an alleged crime, he did not connect the appellant to the telephone conversations until after taking his statements six weeks later on June 15.
The two telephone conversations in question took place on April 27, 1977. We have reviewed those conversations and find that the first one revealed nothing relevant to the appellant's contentions on appeal. In the second conversation, the only semblance of a promise made by Officer Wallace was in regard to postponing the filing of charges against the appellant until the supposed attorney contacted the district attorney's office in Birmingham. Charges were not filed against the appellant until May 2, 1977. However, this has no impact on the *Page 638 
subsequent inculpatory statement of June 15. Further, throughout the second telephone conversation, Officer Wallace did no more than state that he would recommend certain action to the district attorney, yet he clearly indicated the ultimate decision in the case was for the district attorney's office to make.
In the April 27 telephone conversations, Officer Wallace was attempting to persuade the supposed attorney to give him the name of the perpetrator of the instant robbery. He discussed with the supposed attorney the possibility of the appellant being committed to a mental institution in the Washington, D.C., area rather than going through the extradition process bringing the supposed client back to Alabama and then finding that his mental condition would require commitment to a mental institution in this state.
From reviewing the transcripts of the April 27 telephone conversations, it is clear that Officer Wallace thought he was discussing possible courses of action with an out-of-state attorney representing an unidentified client who was a potential criminal defendant. Consequently, Officer Wallace could not have made promises to the appellant since he did not know that he was actually speaking to the appellant. The April 27 telephone discussions were so remote in time and in substance from the June 15 interview of the appellant that the conversations clearly had no influence on the appellant in making the latter statement.
The June 15 statement was admitted into evidence after a proper predicate as to voluntariness and a Miranda warning had been established.
 IV
The appellant contends that the trial court erred in allowing two tape recordings of the April 27 telephone conversations to be played to the jury without establishing a proper chain of custody. This issue is raised for the first time on appeal. At trial, during examination of Officer Wallace concerning the tape recordings, the following occurred:
 "THE DEFENDANT: Your Honor, before that is entered I'm going to ask that the D.A. be allowed to enter the proper predicate before this, because unless Sergeant Wallace is indeed a voice expert in transmission I think that the State needs to lay the proper predicate in order to rely on this, because Sergeant Wallace is in robbery and homicide and not an expert on voice interpretation.
 "THE COURT: So, you base your objection on that ground:
"THE DEFENDANT: Right.
"THE COURT: Overruled."
It is obvious that the appellant's objection does not meet the substance of his argument on appeal. Appellant may not raise an objection to the evidence for the first time on appeal which was not raised at trial. Law v. State, Ala.Cr.App.,342 So.2d 412, cert. denied, Ala., 342 So.2d 413 (1977). Furthermore, specific grounds for an objection waive all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial. Slinker v. State, Ala.Cr.App., 344 So.2d 1264, 1267 (1977).
 V
The appellant next contends that the admission of his statement made to Officer Alice Reed on June 17, two days after his earlier interrogation, was erroneous in that he was led to believe through his April 27 telephone conversations with Officer Wallace that if he cooperated he would receive favorable treatment.
The appellant likewise raises this issue for the first time on appeal. At trial, counsel for appellant objected during a voir dire examination of Officer Reed as follows:
 "Your Honor, this is all hearsay. And it is after the crime. And it has nothing to do with the alleged crime. It's just — I've just got to object to it, Your Honor.
"THE COURT: For those reasons, overruled."
The trial court asked appellant's counsel, after further testimony, whether or not *Page 639 
there was any other objection. Counsel for appellant stated, "I have already stated them, Your Honor." The appellant is bound by the grounds of objection stated at trial and an objection for the first time on appeal comes too late. Slinker, supra.
 VI
Appellant contends the trial court erred in not restricting the district attorney's closing argument which was calculated to inflame and prejudice the jury.
 The first statement complained of is: "I told you in my opening statement that the con man disappeared and the animal arrived. Now, you tell me that that isn't exactly right. The con man over here disappeared, the lawyer, the lawyer on the tape. The lawyer who conducted this trial disappeared and the animal arose." The second statement complained of is: "This reminds me of the wolf and Little Red Riding Hood. Do you remember the wolf? The wolf was dressed up like Grandma. Remember that? Little Red Riding Hood comes into the house, and there is the wolf in the bed dressed up like Grandma. And ya'll can picture in your mind's eye what —"
Appellant at that time made a specific objection, and the trial court overruled.
A prosecutor as well as defense counsel has a right to present his impressions from the evidence. Carroll v. State,36 Ala. App. 59, 52 So.2d 171 (1951). He may argue every legitimate inference from the evidence and may examine, collate, sift, and treat the evidence in his own way. White v. State, 41 Ala. App. 54, 123 So.2d 179, cert. denied, 271 Ala. 702, 123 So.2d 186
(1960).
As to the first statement that the con man disappeared and the animal arrived, we find no improper inference on the part of the prosecutor. The evidence in the case clearly showed that the appellant used subterfuge in luring the prosecutrix into his clutches where he committed a foul and unnatural sex act with her during the course of the robbery. The appellant again used subterfuge in telephoning Officer Wallace and pretending to be an attorney. Thus, the prosecutor's first statement is certainly a permissible inference which could be drawn from the evidence in the case.
The same could be said for his analogy to the story of Little Red Riding Hood. The evidence supports the inference that the appellant used no less subterfuge on the prosecutrix than the wolf did on Little Red Riding Hood in that children's story. As stated in McQueen v. State, Ala.Cr.App., 355 So.2d 407, at 411 (1978):
 ". . . Statements of counsel in argument to the jury must be viewed as in the heat of debate, and such statements are usually valued by the jury at their true worth and are not expected to become factors in the formation of the verdict. . . ." (Citations omitted.)
AFFIRMED.
All the Judges concur.