Julian William Daly, Jr., was indicted for murder in violation of § 13A-6-2, Code of Alabama 1975. The jury found the appellant "guilty as charged in the indictment" and the trial court set sentence at life imprisonment in the penitentiary.
At approximately 12:00 a.m. on August 5, 1982, Ralph Copeland, who lives near the intersection of County Road 24 and Ridge Road in Russell County, Alabama, heard a noise similar to a vehicle hitting something. He looked out of his window and saw a lot of dust. Later, he heard another vehicle and saw what appeared to be someone picking up somebody.
About one-half hour later, Copeland's sister came to his house and told him someone was badly hurt and lying in the road. Copeland went outside and saw a red and white pickup truck and a man lying behind the truck. He then called the police.
Trooper W.L. Ross received a call concerning an accident at 12:58 a.m. on August 5, 1982. When he arrived at the scene, he found a 1970 red and white Ford pickup truck which appeared to have struck *Page 145 
a tree in a 90 degree curve at the intersection of County Road 24 and Ridge Road. He found a body lying face up behind the wrecked truck. When he examined the body, he saw what appeared to be gunshot wounds so he summoned extra help.
The body was determined to be that of James A. Crouch and the truck belonged to the deceased.
Approximately twenty to thirty feet from the accident, a driver's license bearing the appellant's name and address was found. Two officers were sent to the appellant's residence where they found what appeared to them to be relevant evidence.
A short time later, the officers were informed that the appellant was at the Eufaula State Trooper's Post.
The evidence in this case was obtained from three separate sources; the site of the accident, the appellant's residence and premises, and the appellant's truck.
Beside the passenger door of the wrecked truck, a trash bag was found which contained a wallet, several one dollar bills, some .45 caliber shells and casings and several articles of garbage. A damp mop with a broken handle and some photo albums bearing the name of the appellant were found in the bed of the truck. Some bed sheets which matched the pattern of a pillowcase found in the appellant's residence, were also found in the bed of the truck, along with a piece of a denture plate which matched the denture material later found in the appellant's residence. A large amount of blood in the bed of the truck matched the deceased's blood type.
Near the site of the wreck, tire prints were located which were similar in design and wear of the tires on the appellant's truck.
Inside the passenger area of the truck, blood was found on the top of the steering wheel, and on the passenger seat. The blood from the seat was of the same type as the appellant's blood type. The ignition key, which was located to the left of the steering wheel, was also bent. The appellant was later found to have injuries on his chin and his knee which would be consistent with his body's having struck the steering wheel and the ignition key.
After securing a search warrant, the officers executed a search of the appellant's residence and premises. The gate to the appellant's driveway was lying on the ground and was determined to have been knocked down by the appellant's truck. There were tire prints in the dew and footprints which led from the railroad tracks behind the appellant's house to his front door. A path from the site of the wreck to the appellant's house was also discovered.
Several articles were strewn about the yard and on the porch. The porch was wet although there had been no rain. Two checkbooks, belonging to the deceased, were found on the ground. Blood and pieces of bone and flesh were found on the porch and inside the front door.
The front door appeared to have been forced open from the outside and all of the lights were on in the house. Inside the house, the officers found a few .45 casings, approximately 3000 rounds of .45 caliber ammunition along with equipment set up to reload .45 ammunition. They also found four weapons, a .22 pistol, a .44 revolver, a .30 rifle and a shotgun. They were never able to locate the .45 semi-automatic pistol which the appellant said he owned.
Several bullet holes were found in the kitchen and blood was on the baseboard. However, the walls appeared to have been recently cleaned up to the height where a man could reach. Further, they found a shirt in the washing machine and wet towels in the bathroom which appeared to have been recently washed.
Serological analysis of all of the blood samples that were obtained from the various sources revealed that a pair of pants found in the appellant's bathroom had blood on them which was of the same type as that of the appellant. The blood and tissue found in the appellant's house matched the deceased's type and the blood from the clothing worn by the appellant was his own. *Page 146 
On August 5, 1982, at 12:36 a.m. C.S.T., the appellant struck a parked car in the parking lot of the trooper post in Eufaula, Alabama. Several officers went outside and found the appellant slumped over his steering wheel with a big dog in the cab. The appellant raised up and pointed to his stomach. The officers believed he had been shot and thought the man involved in this incident might be someone who was connected with the Russell County incident.
Once the appellant got out of the truck, they noticed a cut on his chin and realized that was where the blood was coming from. The appellant was taken to the hospital where he received some stitches. Once back at the post, the appellant was given his Miranda rights and after stating he understood them, he gave the officers a statement but refused to sign it.
The appellant told the officers that he and the deceased had been drinking that night at his house when two blacks came into his kitchen and attacked both of them. He could not remember anything else until he pulled into the trooper post.
A P.E.I. test was administered to the appellant, approximately three hours after he arrived at the post. It registered .08. The officers said it was obvious the appellant had been drinking but he was not intoxicated.
In the bed of the appellant's truck, an empty clip for a .45 pistol, several .45 casings, several articles of clothing, including a shirt with blood and denture material on it were found.
A waitress at the Possum Trot restaurant in Russell County stated the appellant and the deceased had been at the restaurant drinking on the night of August 4, 1982. The two began fussing and the appellant left. He returned 15 minutes later, paid the bill and the two men left.
The autopsy report revealed that the cause of death was multiple gunshot wounds to the head. The deceased's blood alcohol content was .20. The deceased received six wounds, three of which could have caused his death. The deceased also had lacerations and contusions on his facial area and on the back of the left hand. This would be consistent with the deceased having been struck with a blunt object.
A ballistics expert testified that the only bullet that remained in the deceased's body, a bullet found in the appellant's trash can and one recovered from the kitchen wall, were all fired from the same .45 automatic or semi-automatic pistol. All of the expended casings which were recovered were also fired from the same weapon.
 I
The appellant contends the trial court erred by refusing the requested charge that "Neither the Defendant nor his attorney was present before the grand jury, and thus, did not present any evidence on behalf of the Defendant to the grand jury."
We do not agree with the appellant. It is not the function of the grand jury to hear the defendant's side of a case. The trial court covered this in its oral charge. Section 12-16-13, Code of Alabama 1975.
From our review of the record, it is clear that the trial judge explained to the jury the proper role of the grand jury and the indictment itself as it pertains to the criminal trial process. Therefore, the trial judge did not err by failing to give the above requested written charge to the jury.
 II
The appellant argues that reversible error occurred when the district attorney made an improper and impermissible comment about the appellant's failure to testify.
In determining whether the district attorney's statement was an impermissible comment on the appellant's failure to testify, we must review the statement in the context in which it was made. King v. State, 48 Ala. App. 154, 262 So.2d 764, cert. denied, 288 Ala. 744, 262 So.2d 767, cert. denied,409 U.S. 986, 93 S.Ct. 339, 34 L.Ed.2d 252 (1972). *Page 147 
The relevant part of the record is set out below:
 "(Final argument by Mr. Davis, during which the following occurred:)
 "MR. DAVIS: Is it an hypothesis that that blood that belonged to Julian Daly was in Mr. Crouch's truck? Is that a guess theory? Did he tell you how it got there?
"MR. FUNDERBURK: We object.
 "MR. DAVIS: I said Mr. Funderburk, may it please the Court.
 "THE COURT: Come on over to the side where we can get this on the record. "(Side-bar conference, on record.)
 "MR. FUNDERBURK: At this point we move for a mistrial. I think the jury can make an implication from Mr. Davis's comments that he was inferring that Mr. Daly didn't take the stand to testify and explain to the jury how the blood got there. In this case it would require an automatic mistrial.
 "MR. DAVIS: I would answer first that I made no such reference and secondly, I would answer —
"MR. FUNDERBURK: You said did he take the stand.
 "MR. DAVIS: Secondly, if I did, the most that I could ask the Court is an admonition before the jury.
"MR. LANE: Note our exception, Your Honor.
"(Jury present.)
 "THE COURT: The Court would advise the jury that a remark of counsel directed toward counsel of the opposing party — any remark of that sort should not be taken by you as any evidence. I am going to tell you again — I have told you I think 2 or 3 times today already that the remarks of counsel in this case are not evidence in this case and I have told you where I expect the evidence to come from. So if you will simply recall that at this time and disregard the remark of counsel at this point. (R. 262-263) (Emphasis added).
It is obvious that the district attorney intended the remark to refer to defense counsel and not the appellant when he related this to the court in the presence of the jury. Furthermore, any harm to the appellant was certainly remedied by the trial court's prompt instruction to this jury. Therefore, we find no error in the ruling on this motion for a mistrial. Shadle v. State, 280 Ala. 379, 194 So.2d 538 (1967);Retowsky v. State, 333 So.2d 193 (Ala.Cr.App. 1976); Kuczenskav. State, 378 So.2d 1182 (Ala.Cr.App. 1979), cert. denied,378 So.2d 1186 (Ala. 1980) and authorities therein cited.
 III
The appellant's contention that reversible error occurred when the trial court refused to charge the jury on the "lesser included offense of manslaughter" is without merit.
"A defendant is likewise not entitled to charges on lesser included offenses when he denied committing the crime itself.Parker v. State, Ala.Cr.App. 337 So.2d 1378 (1976)." Williamsv. State, 377 So.2d 634 (Ala.Cr.App. 1979). The appellant in this case plead not guilty, gave a statement to the police, inferring that two blacks committed the crime and presented no evidence at trial. Therefore, the appellant was not entitled to the charge on the lesser included offense of manslaughter under the evidence presented at trial.
Further, "[a] charge on a lesser-included offense should not be given when there is no reasonable theory from the evidence to support such a proposition." When the evidence clearly shows the appellant is either guilty of the offense charge, or innocent, the charge on a lesser included offense is not necessary or proper. Cooper v. State, 364 So.2d 382
(Ala.Cr.App.), cert. denied, 364 So.2d 388 (Ala. 1978).
From our review of this record, it is clear that the appellant either intentionally murdered the deceased or was innocent of the crime. We find absolutely no evidence to support a charge of manslaughter. Therefore, the trial judge correctly refused *Page 148 
the appellant's requested charge as above noted.
 IV
Defense counsel contends that his motion to exclude should have been granted because the State failed to prove a prima facie case. Although this appellant's conviction was based entirely on circumstantial evidence, we conclude there was sufficient evidence, presented at trial, to support this conviction.
 "`In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude.' (Citations omitted). Cumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1979).
 "Whether there was sufficient circumstantial evidence to exclude every other reasonable hypothesis but that of guilt is a question for the jury and this court will not substitute its judgment for that of the jury. Thomas v. State, 363 So.2d 1020
(Ala.Cr.App. 1978).
 `This court will not disturb a verdict of conviction on the grounds of insufficiency of the evidence, "unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this court that is was wrong and unjust.'"
Johnson v. State, 378 So.2d 1164 (Ala.Cr.App. 1979). This court is not so convinced." Wicker v. State, 433 So.2d 1190
(Ala.Cr.App. 1983).
From our review of this record, we hold the State presented sufficient evidence, from which the jury could conclude by fair inference, that the appellant was guilty of murder, beyond a reasonable doubt. The jury correctly resolved this matter contrary to the appellant's contentions.
For the reasons stated above, this cause is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.