The appellant, Allan Andrew Fuller, was convicted of manslaughter. He was sentenced to 20 years in prison.
The state's evidence showed that Joe Floyd was found dead in his yard on the evening of April 3, 1989. He had been shot in the chest. The appellant's father-in-law, William Day, testified at trial that the appellant told him right after the shooting that he had shot Floyd. Day tried to convince the appellant to call the police, but he refused; therefore, Day informed the authorities about the shooting. Day testified that the appellant had been drinking but that he was "acting all right" when he saw him directly after the shooting.
Sheriff Tom Tate of Monroe County testified at trial that he arrived at the scene to find a body lying face down in the driveway of the Floyd residence. After other officers arrived, he left the scene to locate *Page 671 
the appellant. He stopped an automobile matching the description of that driven by the appellant and ordered the person driving the automobile to get out. The individual driving the car shouted, "I'm Allan Fuller. I know you're looking for me because I shot Joe Floyd." The appellant was then taken into custody.
The appellant testified at trial to his version of the events leading up to the homicide, which, in essence, made it appear that the victim had attacked him and that the appellant had acted in self defense. On cross-examination the appellant admitted that the victim told him that he did not have a gun in his hand and that he did not see one. The victim was found lying face down with a beer in one hand and a cigarette lighter in the other. The appellant presents the following issues on appeal.
 I
The appellant initially contends that the trial court erred in allowing a statement he made to the police to be received into evidence. Specifically, he maintains that he was not read his Miranda[1] rights and that his confession was not voluntary because, he says, he had been drinking just before making the statement.
"[A]n extrajudicial confession is prima facie involuntary and inadmissible and . . . the duty rests upon the state to lay the proper predicate." C. Gamble, McElroy's Alabama Evidence § 201.03 (4th ed. 1991). The state must show that the accused was informed of his constitutional rights and also that the statement was voluntary. See Carpenter v. State, 581 So.2d 1277
(Ala.Cr.App. 1991); Magwood v. State, 494 So.2d 124
(Ala.Cr.App. 1985), aff'd, 494 So.2d 154 (Ala.), cert. denied,479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986); Royal v.State, 447 So.2d 834 (Ala.Cr.App. 1983).
The appellant, in the instant case, made two statements to police officers. The statement that the appellant contends was involuntary was the statement made to officers on the night of the crime. Sheriff Tom Tate testified that he and several other officers apprehended the appellant several miles from the shooting. When they stopped the appellant, Sheriff Tate handcuffed the appellant and one of the other investigators read him his Miranda rights. Sheriff Tate testified that he could tell that the appellant had been drinking but that he was coherent and made sense when he talked. He did not appear to be under the influence to the extent that he did not know what he was doing. At that time the appellant told police officers that the gun in the front seat was the gun he had used to shoot Joe Floyd. He also told police where he was parked at the time of the shooting. (The part of the statement dealing with where his car was parked conflicted with the appellant's testimony at trial.)
As this court stated in Gilder v. State, 542 So.2d 1306
(Ala.Cr.App. 1988), "[t]he voluntariness of a confession is a question for the trial judge and should not be disturbed on appeal unless it is manifestly wrong." "The voluntariness of an alleged confession is a question of law addressed to the trial court. . . ." Hubbard v. State, 500 So.2d 1204, 1218
(Ala.Cr.App.), aff'd, 500 So.2d 1231(Ala. 1986), cert. denied,480 U.S. 940, 107 S.Ct. 1591, 94 L.Ed.2d 780 (1987). The standard used by the trial court for determining the voluntariness of a confession is "preponderance of the evidence." Griffin v. State, 500 So.2d 83, 89
(Ala.Cr.App. 1986).
In the instant case the evidence presented supported the state's position that the statement was voluntary. The appellant at trial did not contest the fact thatMiranda rights were read to him. His only objection at trial was that the officer who read him his rights should have testified, not Sheriff Tate, who did not read the appellant his rights. No motion to suppress this statement was made. At the time that Sheriff Tate was testifying the appellant objected by stating that Tate was not the correct person to testify that the appellant had been read his rights. The trial court stated that Tate could testify to the fact that the appellant was read his *Page 672 
rights because Tate was present and heard the rights being read to the appellant. We agree with the trial court's ruling.
The appellant also maintained that his statement was involuntary because he had been drinking. At the time that the trial court ruled on the appellant's objection concerning the statement, no evidence was presented by the appellant that he had been drinking to such an extent as to render his confession involuntary. Indeed there was no evidence presented during the course of the trial that showed that the appellant was so intoxicated that he did not know what he was doing. In order for a confession to be inadmissible based on the appellant's intoxication, the " 'mind of the appellant must be substantially impaired when the confession was made.' "Mann v. State, 581 So.2d 22 (Ala.Cr.App. 1991), quoting Cross v.State, 536 So.2d 155 (Ala.Cr.App. 1988). See also Hubbard, supra; McCammon v. State, 499 So.2d 811 (Ala.Cr.App. 1986);Moore v. State, 488 So.2d 27 (Ala.Cr.App. 1986); Palmer v.State, 401 So.2d 266 (Ala.Cr.App.), writ denied, 401 So.2d 270
(Ala. 1981), cert. denied, 455 U.S. 922, 102 S.Ct. 1280,71 L.Ed.2d 463 (1982). "Where ample evidence . . . exists from which the trial judge could conclude that the appellant was not intoxicated to the extent of mania, the admission of a confession for a jury's consideration is not an abuse of discretion." Hubbard, 500 So.2d at 1218. The trial court's ruling was not "manifestly wrong."
Moreover, the admittance of that part of the statement in which the appellant told police that he had shot Joe Floyd was harmless error because he testified to the same effect. Any error in regard to the admission of a confession is rendered harmless where the confession was substantially the same as the appellant's testimony. Felder v. State, 470 So.2d 1321, 1326
(Ala.Cr.App. 1984), aff'd, 470 So.2d 1330 (Ala. 1985), vacated on other grounds, 474 U.S. 976, 106 S.Ct. 376, 88 L.Ed.2d 330
(1985), on remand, 491 So.2d 225 (1986).
The ruling of the trial court is supported by the evidence. No error occurred here.
 II
The appellant next contends that the trial court erred in allowing a tape recording of the statement he made to police on the day after the shooting to be received into evidence without first establishing a chain of custody for the tape.
 "This court, in Molina v. State, 533 So.2d 701
(Ala.Cr.App. 1988), abolished the rigid prerequisites necessary for establishing a chain of custody for receiving a tape recording into evidence. Now, all that is required is to show that the recordings are 'reliable representations of the subject sound.' "
Jackson v. State, 582 So.2d 598 (Ala.Cr.App. 1991), quoting Rossv. State, 555 So.2d 1179, 1182 (Ala.Cr.App. 1989). See alsoStrother v. State, 587 So.2d 1243 (Ala.Cr.App. 1991).
In the instant case, Larry Ikner, investigator for the Monroe County district attorney's office, testified that the recording was an actual account of the conversation that took place between him and the appellant at the county jail. This testimony was sufficient to allow the tape recording to be received into evidence.
The appellant also maintains that the tape should not have been admitted because part of the tape was inaudible. However, this would not affect the admissibility of the tape but rather the weight accorded the evidence. See Jackson, supra. Furthermore, a transcript of the statement was received into evidence when the tape was admitted.
 III
The appellant next contends that the trial court erred in not charging the jury on the lesser offense of criminally negligent homicide.
This court has stated on many occasions that a trial court should " '. . . not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.' " Bell v.State, 518 So.2d 840, 842 (Ala.Cr.App. 1987), cert. denied, *Page 673 486 U.S. 1036, 108 S.Ct. 2024, 100 L.Ed.2d 611 (Ala. 1988); quoting § 13A-1-9(b), Code of Alabama 1975. (Emphasis added in Bell.)
This court in Wiggins v. State, 491 So.2d 1046, 1048
(Ala.Cr.App. 1986), stated:
 "An instruction on criminally negligent homicide is proper only where the victim's death was caused by the defendant's inadvertent creation and subsequent disregard of a risk of harm of which he should have been aware, but which in fact he was not aware of. Weems v. State, 463 So.2d 170
(Ala. 1984); Phelps v. State, 435 So.2d 158
(Ala.Cr.App. 1983); Model Penal Code and Commentaries § 210.04, Comment 1. To warrant the giving of such an instruction there must be some evidence that the defendant was not aware of the risk he was creating. Wakefield v. State, 447 So.2d 1325 (Ala.Cr.App. 1983); § 13A-2-2, Code of Alabama 1975.
 "In Robinson v. State, 441 So.2d 1045, 1047
(Ala.Cr.App. 1983), this court observed that a person 'who intentionally draws a gun in response to or in anticipation of a confrontation with another is certainly aware of the risk that the gun might discharge; therefore, he cannot be guilty of mere criminal negligence.' "
See also Williams v. State, 518 So.2d 888 (Ala.Cr.App. 1987).
There was no rational basis to support a charge on criminally negligent homicide. No error occurred here.
 IV
The appellant next contends that the trial court erred in not charging the jury on self-defense. For the following reasons, the trial court committed no error in refusing to instruct the jury on self-defense.
Section 13A-3-23, Code of Alabama 1975, provides, in pertinent part:
 "(a) A person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for the purpose. A person may use deadly physical force if the actor reasonably believes that such other person is:
 "(1) Using or about to use unlawful deadly physical force. . . ."
As Judge Bowen stated in Weaver v. State, 500 So.2d 1278,1279 (Ala.Cr.App. 1986):
 " '[A] person is not justified in using deadly physical force upon another person if it reasonably appears or he knows that he can avoid the necessity of using such force with complete safety: (1) By retreating.' Alabama Code 1975, § 13A-3-23(b). 'As a general rule, the accused is not entitled to have his claim of self-defense submitted to the jury if the undisputed evidence shows clearly any of the following: . . ., that the accused was able to retreat. . . .' C. Gamble, McElroy's Alabama Evidence § 457.02(5)(a) (3rd ed. 1977). 'In the absence of evidence warranting a finding both that the accused was in actual or apparent imminent peril and that he was unable to retreat, it is assumed that he was not in such peril and that he was able to retreat.' McElroy's
at 457.02(5)(b). 'Where the accused claims the [use of deadly physical force] was in self-defense, the onus rests on him to show that he could not safely retreat without increasing or apparently increasing his peril.' McDonald v. State, 340 So.2d 80, 84
(Ala.Cr.App.), cert. denied, 340 So.2d 84
(Ala. 1976)."
(Emphasis added.) "A court should not instruct on self-defense when there is no evidence to sustain the plea . . . or when the defendant's evidence showed that he did not act in self-defense." Raines v. State, 455 So.2d 967, 974
(Ala.Cr.App. 1984).
The evidence did not support an instruction on self-defense. The appellant himself testified that he shot the victim by accident. There is no evidence in the record that the appellant did not have the opportunity to retreat safely before his attack. The appellant further testified that he did not see a gun in the victim's hand. In fact, the victim was found with a beer in one *Page 674 
hand and a cigarette lighter in the other. The evidence showed that the victim was not shot directly from the front as the appellant contended but that the bullet entered his chest at an angle.
The appellant maintains that he was justified in using deadly force because the victim threatened had his wife and daughter. Any threats that the victim may have made concerning the appellant's wife and daughter do not supply the necessary imminent peril for the use of deadly force. Threats of prospective — not imminent — harm will not support the use of deadly force. See Raines; § 13A-2-23.
 V
The appellant next contends that the trial court erred in not giving several of his requested jury instructions on the effects of the appellant's intoxication. The complained-of instructions would have instructed the jury that intoxication negates the requisite intent and the absence of intent would lower the murder charge to manslaughter.
In the present case, the trial court, in denying any instructions dealing with intoxication, stated:
 "I'm not going to give your charge on voluntary intoxication negating a specific intent for this reason: the testimony is uncontroverted that on the night of the incident he talked with the sheriff. The sheriff testified that he was coherent and understood and cooperated and discussed it with him.
 "His father-in-law testified that he saw him a few minutes after it was supposed to have happened, that he could smell alcohol but he didn't appear to be drunk, that he could talk with him and he understood and talked with him. He gave the sheriff a statement. He went to the scene and pointed out where things happened.
 "He gave a statement the next day in which he discussed what they did during the entire day right on up until his arrest. He discussed what they talked about, where they were when they talked about it and what his mental operation was at the time that everything happened. He even testified and gave statements about what his mental operation was all during the time that he shot the gun into the ground and fired the shot that killed Joe Floyd. So it's apparent from the clear and undisputed testimony that he was not under the influence of alcohol or intoxicated to the extent that he could not be rational or reasonable in his — in what he did."
The appellant maintains that the evidence of his intoxication was a jury question. " 'The court does not invade the province of the jury in a criminal prosecution by stating that there is or is not evidence of particular facts when such is the case.' " Raines, 455 So.2d at 974, quoting Cole v. State,352 So.2d 17, 20 (Ala.Cr.App.), cert. denied, 352 So.2d 20 (Ala. 1977). The charges were correctly refused because they were not predicated on the evidence presented in this case. Herndon v.State, 373 So.2d 1244 (Ala.Cr.App. 1979); Thornton v. State,369 So.2d 63 (Ala.Cr.App. 1979).
Moreover, the appellant was indicted for murder. He was found guilty of the lesser included offense of manslaughter. The denial of any requested instructions dealing with manslaughter would not constitute reversible error because the appellant can show no prejudice. Rule 45, A.R.App.P.
 VI
The appellant next contends that the trial court erred in not granting his motion for mistrial after he discovered that one of the jurors on the panel was living with one of the officers who had been called to the scene of the shooting. The appellant maintains that the juror failed to answer a question posed to the venire about whether they had heard anything about the case. The appellant concedes that the juror did answer the question posed concerning whether she was related to or friends with any law enforcement officers. When this question was asked, the juror raised her hand, but no further *Page 675 
questions were asked of her. When defense counsel discovered the juror's relationship with one of the officers, he asked for a mistrial. The trial court held a hearing in which both the juror and the officer testified. The juror stated that she had heard nothing about the case. The officer said that he had told her nothing about the case except the fact that he had been called to the scene of the crime. There is no evidence that the juror intentionally covered up or failed to answer a question posed to her on voir dire.
" '[W]e recognize that parties have a right to have questions answered truthfully by prospective jurors to enable wise and informed exercise of their peremptory strikes and that when jurors fail to answer questions correctly, the parties are denied the exercise of that right.' " Riley v. State,582 So.2d 1163 (Ala.Cr.App. 1991); quoting Parish v. State, 480 So.2d 29,30 (Ala.Cr.App. 1985). A review of the record convinces us that the juror did not withhold any information. She responded truthfully about her relationship with an officer, and no other questions were asked of her. She did not respond to the question concerning knowledge of the case because, as she stated at the motion hearing, she did not know any facts surrounding the case. The trial court did not err in denying the appellant's motion for mistrial.
For the foregoing reasons, the judgment in this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).