The appellant, Donald Randall Powell, was convicted after a jury trial of unlawful distribution of a controlled substance, in violation of § 13A-12-211, Code of Alabama 1975. He was sentenced as a habitual offender to life in prison plus five additional years' imprisonment pursuant to § 13A-12-250
because the sale for which he was convicted occurred within three miles of an educational institution.
 I
The appellant argues that the trial court erred by denying his motion pursuant to Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The state used four of its seven strikes to remove blacks from the venire. The trial court questioned whether the appellant had proved a prima facie case, but it required the state to provide reasons for its strikes; therefore, this court will review those reasons.See McLeod v. State, 581 So.2d 1144 (Ala.Cr.App. 1990); Williams v. State, 548 So.2d 501 (Ala.Cr.App. 1988), cert. denied, 489 U.S. 1028, 109 S.Ct. 1159,103 L.Ed.2d 218 (1989). We note initially that the voir dire examination of the veniremembers is not contained in the record.
The prosecutor stated that she struck black venireperson no. 48 because the venireperson's brother was paralyzed as a result of drug use and because her husband was a minister and a teacher at a Christian school. The prosecutor further stated that, because this venireperson was religious and because of her brother's condition, which was caused by drugs, she would likely be unduly sympathetic to the appellant. The trial court put this venireperson back on the jury; therefore, we need not review this strike other than to consider it as a companion strike in analyzing the other strikes. We do note, however, that in a capital case, this court has upheld the striking of a venireperson because she was the wife of a minister. Hartv. State, [Ms. 89722, Feb. 28, 1992], 1992 WL 73111 (Ala.Cr.App. 1992).
The prosecutor stated that she struck black venireperson no. 115 because *Page 413 
the venireperson's nephew had been charged with possession of cocaine and because the venireperson admitted that he had some kind of drug problem. These reasons are race neutral. SeeScott v. State, 599 So.2d 1222 (Ala.Cr.App. 1992) (prosecution of family members held race-neutral reason);Stephens v. State, 580 So.2d 11, 19 (Ala.Cr.App. 1990), affirmed, 580 So.2d 26 (Ala. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 176, 166 L.Ed.2d 138 (1991) (venireperson's or family member's "connection with or suspicion of criminal activity" is a race-neutral reason); Harvey v. State,579 So.2d 22 (Ala.Cr.App. 1990) (state's prosecution of venireperson's sons is race-neutral reason).
The prosecutor stated that she struck black venireperson no. 129 because the venireperson previously had served on a jury that could not reach a verdict and had also served on another jury that returned a not guilty verdict, because her brother had been arrested for theft, and because she gave the prosecutor what the prosecutor perceived to be a "dirty" look when defense counsel was discussing "justice and equality for all." These reasons have been held to be sufficiently race neutral. See Scott ("possible hostility towards or prejudice against" prosecution, demeanor, and prosecution of family members are race-neutral reasons); Whittlesey v.State, 586 So.2d 31 (Ala.Cr.App. 1991) (venirepersons' having served on juries that acquitted or that did not reach a verdict is race-neutral reason); Stephens (demeanor and prosecution of family members are race-neutral reasons);Harvey (prosecution of family members is race-neutral reason); Watkins v. State, 551 So.2d 421 (Ala.Cr.App. 1988) (venirepersons' having served on jury that acquitted or that could not reach a verdict is race-neutral reason);Smith v. State, 531 So.2d 1245 (Ala.Cr.App. 1987) (venireperson's having served on jury that acquitted defendant is race-neutral reason).
The prosecutor stated that she struck black venireperson no. 211 because that venireperson had previously served on a jury that could not reach a verdict and because she was a nurse. As discussed above, prior service on a jury that could not reach a verdict has been considered a race-neutral reason. SeeWhittlesey; Watkins. Regarding this venireperson's occupation as a nurse, the prosecution stated, "Also, she is a member of the nursing profession. I perceive that as a very sympathetic, perhaps unduly sympathetic profession for an individual that might cause her to have more than an abundance of sympathy for the defendant in this particular case." In the absence of any voir dire supporting the state's contention that this venireperson would be unduly sympathetic because of her occupation, the mere fact that the venireperson is a nurse is not a valid race-neutral reason. Jackson v. State,557 So.2d 855 (Ala.Cr.App. 1990); cf. Bass v. State,585 So.2d 225 (Ala.Cr.App. 1991) (where this court upheld the strike of a black nurse, one of whose relatives had had a nervous breakdown, in a case dealing with insanity and where the state also struck a white nurse).
In reviewing the state's justification of these last two strikes on the particular reason that these venirepersons had previously served on a jury that either acquitted or deadlocked, we must point out the appellant's unrefuted contention that the state failed to strike white venireperson no. 156, who had sat on a jury that had acquitted a defendant in a murder trial. This court has condemned the failure to strike white venirepersons who share the same characteristics as black venirepersons who were struck. See Carrick v.State, 580 So.2d 31 (Ala.Cr.App. 1990); Acres v.State, 548 So.2d 459 (Ala.Cr.App. 1987). See alsoState v. Butler, 731 S.W.2d 265 (Mo.App. 1987) (strike of black nurse held invalid when white venireperson employed by the American Nurses Association was not struck). InCarrick, 580 So.2d at 32, this court noted the following: *Page 414 
 "In Powell v. State, 548 So.2d 590, 593
(Ala.Cr.App. 1988), this court took notice of what the Alabama Supreme Court observed in Ex parte Branch [, 526 So.2d 609 (Ala. 1987)]:
 " 'In Ex parte Branch, our Supreme Court observed:
 " ' "Once the prosecutor has articulated a nondiscriminatory reason for challenging the black jurors, the other side can offer evidence showing that the reasons for explanations are merely a sham or pretext. [People v.] Wheeler, 22 Cal.3d [258] at 282, 583 P.2d [748] at 763-64, 148 Cal.Rptr. [890] at 906 [1978]. Other than reasons that are obviously contrived, the following are illustrative of the types of evidence that can be used to show sham or pretext:
" ' ". . . .
 " ' "3. Disparate treatment — persons with the same or similar characteristics as the challenged juror were not struck. Slappy [v. State], 503 So.2d [350] at 354 [Fla. Dist. Ct. App. 1987]; [People v.] Turner, 42 Cal.3d [711] at 725, 726 P.2d [102] at 110, 230 Cal.Rptr. [656] at 664 [1986]; Wheeler, 22 Cal.3d [at] 282, 283 [583] P.2d at 760, 148 Cal.Rptr. at 906." '
 "In the instant case, the State engaged in the type of disparate treatment denounced in Branch. See also Acres v. State, 548 So.2d 459 (Ala.Cr.App. 1987) (wherein this Court held that the validity of the prosecutor's reasons for striking two black venirepersons because they had had traffic citations did not 'stand up under close scrutiny' when the record revealed that two white jurors who served on the jury had similar traffic offenses, at 473). Here, as in Acres, the State simply did not remove white persons for the same reasons given by the State for removing blacks." (Some bracketed language original; some added.)
Because the state failed to strike a white venireperson who shared the same characteristic — prior service on jury that acquitted or deadlocked — as black venirepersons who were struck, it is arguable that the prosecution engaged in the type of disparate treatment denounced in Ex parteBranch, 526 So.2d 609 (Ala. 1987). Thus, although prior jury service could, under other circumstances, be a race-neutral reason for striking venirepersons No. 129 and 211, we will not consider this reason sufficient here because the state failed to strike a white venireperson sharing the same characteristic.
Thus, we are left with the following situation: The trial court ordered venireperson no. 48 to be placed on the jury, even though one reason given for striking her could have arguably been race neutral; all reasons for striking venireperson no. 115 were race neutral; two of the three reasons for striking venireperson no. 129 were race neutral and the third was rendered invalid by the state's failure to strike a white venireperson for the same reason; and one of the reasons for striking venireperson no. 211 would ordinarily be insufficient and the other, was rendered invalid because the state did not strike a white venireperson for the same reason. The state used 4 of its 7 strikes to remove 4 of the 11 blacks on the venire, and 8 blacks served on the jury that tried the case.[1] In addition, the trial court stated, "I haven't seen any indication in the past by [the prosecutor], who's probably tried 50 cases in this courtroom, that she strikes on the basis of race."
This court has noted that when both a suspect reason and a valid reason have been given, the court may rely on the valid reason and need not address the suspect reason. Cf. Davisv. State, 555 So.2d 309 *Page 415 
(Ala.Cr.App. 1989). We find that the trial court did not err here by upholding the state's strike of venireperson No. 129 because the state provided two other valid race-neutral reasons for the strike. Cf. Davis. The strike of venireperson no. 211, however, is troubling. If we discount the jury service reason for striking no. 211 under circumstances existing here, we are left only with the state's contention that because this venireperson is a nurse she would be "unduly sympathetic."
This court will uphold the trial court's ruling unless it was clearly erroneous. Branch, 526 So.2d at 625-26. This determination will be made after "considering all relevant circumstances." Id. at 526. We first note that the trial court questioned whether the appellant established a prima facie showing of discrimination, but apparently out of an abundance of caution, required the prosecution to provide reasons for its strikes. In our opinion, if the appellant established a prima facie showing at all, it was very weak. Thus, in our review, we are mindful of the following:
 "The explanation offered for striking each black juror must be evaluated in light of the explanations offered for the prosecutor's other peremptory strikes, and as well, in light of the strength of the prima facie case. The persuasiveness of a proffered explanation may be magnified or diminished by the persuasiveness of companion explanations, and by the strength of the prima facie case."
Ex parte Bird, 594 So.2d 676 (Ala. 1991) (quotingGamble v. State, 257 Ga. 325, 357 S.E.2d 792, 795
(1987)).
The United States Supreme Court has recently focused on the necessity of proof of discriminatory intent, rather than a mere discriminatory impact to show a violation of the Equal Protection Clause. Hernandez v. New York, ___ U.S. ___, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). InHernandez, the Court stated:
 "In evaluating the race-neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law. A court addressing this issue must keep in mind the fundamental principle that 'official action will not be held unconstitutional solely because it results in a racially disproportionate impact. . . . Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.' Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 264265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977); see also Washington v. Davis, 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976). ' " 'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." ' Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979) (footnote and citation omitted); see also McCleskey v. Kemp, 481 U.S. 279, 297299, 107 S.Ct. 1756, 1769-1770, 95 L.Ed.2d 262 (1987).
 "A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."
___ U.S. ___, 111 S.Ct. at 1866 (emphasis added). The Alabama Supreme Court has also held that the trial court is in the best position to determine whether the prosecution has given truthful reasons for its strikes. Scales v. State,539 So.2d 1074 (Ala. 1988). Likewise, the trial court is in the best position to determine whether the prosecution exercised its peremptory strikes in an intentionally
discriminatory manner. *Page 416 
Regarding evidence of discrimination in jury selection, the Alabama Supreme Court has noted the following:
 "When the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created. Logically, if statistical evidence may be used to establish a prima facie case of discrimination, by showing a discriminatory impact, Harrell [v. State], 555 So.2d [263,] 267 [Ala. 1989], citing United States v. David, 803 F.2d 1567, 1571 (11th Cir. 1986), then it should also be available to show the absence of a discriminatory purpose."
Harrell v. State, 571 So.2d 1270, 1271-72 (Ala. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 1641, 113 L.Ed.2d 736
(1991). We find from the facts available in the record[2] of the instant case that the state used 57% (4 of 7) of its strikes to remove 36% (4 of 11) of the black venirepersons. Because one black veniremember was put back on the jury, 67% (8 of 12) of the jurors were black, resulting in 73% (8 of 11) of the black venirepersons ultimately serving on the jury. This statistical evidence buttresses a conclusion that no discriminatory intent motivated the state's exercise of its peremptory challenges.
We certainly find that the state's explanation for striking venireperson no. 211 is very troublesome. However, we cannot, under these circumstances, find that the prosecutor was motivated by discriminatory intent, even in regard to venireperson no. 211. It is without question that the prosecutor had absolutely nothing to gain by striking this venireperson. Moreover, in view of the explanations offered by the prosecutor for striking other venirepersons, of the number of blacks who ultimately served on the jury, of the trial court's finding that the prosecutor had no history of selecting jurors in a discriminatory manner, of the statistical evidence showing an absence of a discriminatory purpose, and of the weakness or lack of a prima facie showing of discrimination, we cannot say that the trial court's ruling was clearly erroneous.
 II
The appellant contends that the trial court erred by refusing to instruct the jury that unlawful possession of a controlled substance is a lesser included offense of unlawful distribution of a controlled substance.
 "A charge on a lesser included offense should not be given when there is no reasonable theory from the evidence to support such a proposition. When the evidence clearly shows the appellant is either guilty of the offense charged, or innocent, the charge on a lesser included offense is not necessary or proper. Daly v. State, 442 So.2d 143 (Ala.Crim.App. 1983); Phelps v. State, 435 So.2d 158 (Ala.Crim.App. 1983); Gwin v. State, 425 So.2d 500
(Ala.Crim.App. 1982), writ quashed, 425 So.2d 510 (Ala. 1983); Hopper v. Evans, 456 U.S. 605
[102 S.Ct. 2049, 72 L.Ed.2d 367] . . . (1982); Cooper v. State, 364 So.2d 382
(Ala.Crim.App.), cert. denied, 364 So.2d 388 (Ala. 1978). 'A defendant is likewise not entitled to charges on lesser included offenses when he denied committing the crime itself.' Daly v. State, supra; Wesley v. State, 424 So.2d 648 (Ala.Crim.App. 1982); Williams v. State, 377 So.2d 634 (Ala.Crim.App.), cert. denied, 377 So.2d 639 (Ala. 1979); Parker v. State, 337 So.2d 1378 (Ala.Crim.App. 1976). Further, a court may properly refuse to charge on lesser included offenses when it is 'clear to the judicial mind that there is no evidence tending to bring the offense within *Page 417 
the definition of the lesser offense.' Phelps v. State, supra; Wesley v. State, supra; Chavers v. State, 361 So.2d 1106
(Ala. 1978)."
Perry v. State, 455 So.2d 999, 1002 (Ala.Cr.App. 1984). See Fuller v. State, [Ms. 90-997, Dec. 27, 1991], 1991 WL 291601 (Ala.Cr.App. 1991); Buice v.State, 574 So.2d 55 (Ala.Cr.App. 1990).
At trial, the evidence tended to show the following facts: Officers Kenneth Miles and Darren Holmes were working undercover for the Birmingham Police Department. While they were patrolling, the appellant approached them at a traffic light and asked them what they wanted. They replied that they were looking for crack cocaine. Shortly thereafter, the appellant got in the back of their car and directed them to an apartment. The appellant got out of the car and went to the front door of the apartment, where he remained for about five minutes. He returned to the car, got in, and handed cocaine to Holmes as Holmes offered him a $20 bill. Miles and Holmes then placed the appellant under arrest.
In Buice, under similar facts, this court held that there was no reasonable theory upon which to base a charge of possession and that the only reasonable conclusion was that the appellant was guilty or innocent of unlawful distribution. InBuice, 574 So.2d at 56, the pertinent facts were as follows:
 "Once at the residence, Officer Tucker and the informant knocked on the door, and a man, whom Officer Tucker identified at trial as the appellant, opened the door and let them in. Officer Tucker asked the appellant if he had what they had come for, at which time the informant went back outside and waited in the car. The appellant told Officer Tucker that he would be back in a minute, and he went to a back room. A few minutes later, the appellant returned and handed Officer Tucker a small clear cellophane sandwich bag containing a brown plant material. Officer Tucker took the bag and placed it inside her purse and gave the appellant $35."
In the instant case, as in Buice, there is no reasonable theory upon which to base an instruction for unlawful possession of a controlled substance; therefore, the trial court did not err by refusing to instruct the jury on unlawful possession.
 III
The appellant argues that "[t]he trial court should have reinstructed the jury as to the burden of proof." The trial court refused the appellant's written requested instructions nos. 1 through 4, and the appellant excepted. After the jury had deliberated for a while, the foreman indicated that the jury had a question for the court, and the following occurred:
 "THE COURT: All right. Ladies and gentlemen, I've got a question here. Who is the foreperson, Mr. [P]?
"JUROR [P]: Yes, sir.
 "THE COURT: The question was: 'Since this package [of cocaine] was in the defendant's mouth, could the residue in his mouth from smoking crack previously have contaminated the substance within the package to such a degree that it would test positively for being cocaine in the amount of .07 grams?'
 "Now, ladies and gentlemen, as I told you before you began your deliberations, I cannot comment on the evidence in this case. You are the sole and exclusive finders of the facts that come from the evidence that you heard in this trial. It would be improper for me to comment on the subject, on the question.
 "Do you have any other questions while I have you out here that may be related to this question in some way?
 "JUROR [P]: No, sir. This was the only one that we couldn't resolve on the point. And Ms. — I didn't get her name.
"JUROR [G]: [G].
 "JUROR [P]: Ms. [G] was wanting proof on that particular point. *Page 418 
 "THE COURT: Well, you have to decide what the facts are from the evidence as you find those facts, okay? All right. I just wanted to be sure that there wasn't anything else."
The appellant again objected to the court's refusal to give his requested instructions nos. 1 through 4.
The appellant now argues that "[t]he jury's question related to a factual issue as to an element of the crime; to wit: the purity or content of cocaine." He further argues that "[s]uch an element is the burden of the state's to prove beyond a reasonable doubt and to a moral certainty," and that the trial court erred by refusing to give his requested instructions or to reinstruct the jury regarding the burden of proof.
The appellant's argument, however, is without merit for several reasons. First, the trial court did not err because the appellant's written requested jury instructions were "substantially covered in the court's oral instruction,"Goodson v. State, 588 So.2d 509, 515 (Ala.Cr.App. 1991). See Raper v. State, 584 So.2d 544 (Ala.Cr.App. 1991); Blackmon v. State, 574 So.2d 1037 (Ala.Cr.App. 1990). Second, the trial court could not comment on the evidence and did not err by telling the jury to rely on the evidence produced at trial. Cf. Smelcher v. State,520 So.2d 229, 234 (Ala.Cr.App. 1987) (in response to question relating to the facts of the case, trial court stated, "You should answer this question by recalling the evidence as you heard it.") Finally, the question related to a factual matter for the jury to resolve and did not call for re-instruction as to the burden of proof.
 IV
The appellant argues that one of his prior convictions used to enhance his sentence was void; therefore, he argues he was illegally sentenced. He contends that his 1984 conviction for receiving stolen property could not be used to enhance his sentence because he was not informed of his right to apply for youthful offender status. The case action summary does not reflect any consideration of youthful offender status; however, "the properly authenticated evidence of a prior felony conviction need not indicate that the accused waived youthful offender treatment or was denied treatment as a youthful offender," Goodwin v. State, 516 So.2d 818, 821
(Ala.Cr.App. 1986), writ quashed, 516 So.2d 821 (Ala. 1987). Furthermore, "[y]outhful offender rights under a prior conviction cannot be raised at the sentencing hearing of an habitual felony offender, but may be challenged by a petition for writ of error coram nobis [, a petition pursuant to A.R.Cr.P. 32]." Id. (citations omitted.)
 V
The appellant argues that the application of §13A-12-250, Code of Alabama 1975, to enhance his sentence violates his rights of due process and equal protection. These issues, however, are not preserved for review because the appellant failed to object and to receive an adverse ruling at the sentencing hearing, and his subsequent raising of these issues in a motion for new trial will not preserve them for review. See Trawick v. State, 431 So.2d 574
(Ala.Cr.App. 1983). See also Woodward v. State,480 So.2d 69 (Ala.Cr.App. 1985).
Based on the foregoing, the judgment of the circuit court is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur.
[1] We determined that there were eight blacks on the trial jury because the trial court noted that there were seven on the jury at the time the Batson objection was made and the court put no. 48 back on the jury.
[2] Our statistical inquiry is somewhat limited because the record does not reflect the total number of venirepersons. *Page 419