White Consolidated Industries, Inc. ("WCI"), appeals from a judgment based on jury verdicts in favor of American Liberty Insurance Company ("American") and Mary Evans McKinney. We affirm.
McKinney and American, as subrogee to McKinney's interest, sued WCI for damages, based on a fire that occurred in McKinney's home on March 9, 1988. McKinney and American alleged that the fire started in McKinney's Gibson clothes dryer (before this action was filed, WCI had acquired the company that manufactured the Gibson clothes dryer). The complaint alleged negligent or wanton design, manufacture, distribution, and sale of the clothes dryer and claimed liability under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"). McKinney amended the complaint before trial to claim damages for personal injury and emotional distress.
The record shows that McKinney discovered a fire in her basement on March 9, 1988. Her clothes dryer, washing machine, furnace, and water heater were in the basement *Page 659 
near where the fire started. She went upstairs to telephone the fire department; after telephoning, she escaped from her house by dropping from a window to the ground. The fall caused a compression fracture of McKinney's lower back and because of that fracture she had to spend four days in a hospital and then had to wear a back brace for several months.
The jury returned verdicts in favor of American for $50,775.42 and in favor of McKinney for $150,000. WCI filed a motion for a judgment notwithstanding the verdict, for a new trial, and for a remittitur; the trial court denied that motion. WCI appeals from the judgment based on the verdicts.
WCI makes five contentions on appeal. It first contends that the trial court erred in overruling WCI's objection to American's use of its peremptory challenges to remove six whites from the venire "without providing an acceptable race-neutral explanation in each and every instance."
The venire panel contained 11 blacks and 13 whites. The jury selected after voir dire consisted of 7 blacks and 5 whites. The trial court held a hearing and found that WCI had shown a prima facie case of discrimination by American's striking only whites. However, the trial court, after hearing explanations for the strikes, held that American had provided specific nondiscriminatory — race-neutral — reasons for each challenge.
The United States Constitution prohibits a prosecutor from using peremptory jury strikes in a racially discriminatory manner. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986). The principles of Batson, as interpreted by this Court, are set forth in Harrell v. State, 555 So.2d 263
(Ala. 1989), Ex parte Branch, 526 So.2d 609 (Ala. 1987), and Exparte Jackson, 516 So.2d 768 (Ala. 1986). The Batson safeguards apply to civil cases, Thomas v. Diversified Contractors, Inc.,551 So.2d 343, 345-46 (Ala. 1989), and, for purposes of responding to WCI's argument, we assume that these safeguards apply to the striking of white venirepersons. See Edmonson v.Leesville Concrete Co., ___ U.S. ___, 111 S.Ct. 2077,114 L.Ed.2d 660 (1991). See also Ray Sumlin Constr. Co. v. Moore,583 So.2d 1320, 1321 n. 1 (Ala. 1991) (constitutional prohibition against striking jurors because of their race applies to civil cases in Alabama state courts).
This Court " 'may only reverse the trial judge's determination that the . . . peremptory challenges were not motivated by intentional discrimination if that determination is clearly erroneous.' " Ex parte Branch, supra, at 625 (citingUnited States v. Mathews, 803 F.2d 325, 330 (7th Cir. 1986), reversed on other grounds, 485 U.S. 58, 108 S.Ct. 883,99 L.Ed.2d 54 (1988)). After thoroughly and carefully reviewing the record, we conclude that the trial judge's denial of WCI'sBatson motion was not clearly erroneous.
WCI next contends that the trial court erred in sustaining the plaintiffs' objection to WCI's attempt to introduce medical records of McKinney's former physician, a Dr. Farmer, which were offered to impeach Mrs. McKinney.
On direct examination, in response to a question by her attorney, McKinney testified that she had never "had any problems with [her] back whatsoever" before she dropped from her window to escape the fire. WCI did not cross-examine her about this testimony. It sought instead to introduce notes made by a doctor consulted by McKinney long before she was allegedly injured by the jump from the window. Such records, if made in the regular course of business, are admissible as an exception to the hearsay rule. A.R.Civ.P. 44. However, if those records are offered for the purpose of putting into evidence a prior inconsistent statement of the witness, as these were, then the party offering the records is required to lay a predicate for their introduction. The colloquy between counsel and the trial court establishes that the records of the medical clinic were offered by WCI to show that McKinney, contrary to her testimony on direct examination, had told a physician that she suffered from back pain. Although these records were kept in the regular course of business by the medical clinic and are admissible by *Page 660 
an exception to the hearsay rule, they may not be used to impeach the witness with a prior inconsistent statement unless the proper predicate is laid.[1] Because the proper predicate was not laid, the trial court did not err in disallowing this hearsay evidence of a prior inconsistent statement made by the witness and reflected in the records of Dr. Farmer, even though those records were kept in the regular course of business.
The sound legal principles behind the requirement that an adequate predicate must be laid before a witness may be properly impeached by a prior inconsistent statement are given in McElroy's Alabama Evidence:
 "When a witness, on cross-examination, denies that [she] made a statement out of court which is inconsistent with [her] testimony on direct examination, the only available move for the impeaching party is to bring on an impeaching witness who can testify as to the prior inconsistent statement of the witness being impeached. Before such extrinsic evidence may be elicited, however, it is the general rule that the impeaching party must lay a proper predicate by asking the party being impeached whether [she] made such statement[,] specifying with reasonable certainty the time when, the place where, the person to whom such supposed statement was made and the substance of such statement.
". . . .
 "The basic reason for the requirement that the predicate question specify time, place, content of the supposed statement, and the person to whom made, is to enable the faculties of the mind of the witness to be put in motion and [her] memory aided by the train of ideas which such circumstances would be likely to suggest with reference to the subject matter under inquiry and thereby be aided in recalling to memory whether [she] made the statement; and, if [she] recalls making it, to give [her] explanation of the apparent conflict between [her] testimony and such prior statement.
 "[This rule] does not require perfect precision in the predicate question with respect to the content of the supposed statement, the time when, the place where, or the person to whom made. The rule is not ironclad and perfection is not required.
 "The predicate for impeachment by inconsistent statement is sufficient even though the impeaching question is not the same, word for word, as the inconsistent statement which is later proven by extrinsic evidence. It must be noted, of course, that proof of a statement by the witness which is contradictory of [her] present testimony, but which is materially variant in meaning from the statement specified in the predicate laying question, is improper and erroneous."
C. Gamble, McElroy's Alabama Evidence, § 157.01(1)-(4) (4th ed. 1991) (footnotes omitted).
This Court has held that "[t]o impeach a witness with a prior inconsistent statement counsel must ask [her] specifically about the statement at issue, with reference to the time and place at which [s]he allegedly made it and the person to whom it was made, and give [her] an opportunity to admit or to deny having made it." Perry v. Brakefield, 534 So.2d 602, 606
(Ala. 1988). Although the rule is not to be rigidly applied, the witness must be given such notice of any prior inconsistent statement as should be necessary to jog her faulty memory, thus allowing her to recognize, and to either deny or explain, the earlier inconsistency. We note that the trial court had the discretion to allow McKinney to be recalled for the purpose of laying the proper predicate, Lewis v. State, 231 Ala. 211,164 So. 92 (1935), cited in McElroy's, supra, at § 157.01(8), but that WCI did not attempt to recall her.
Without the proper foundation, evidence that in the past McKinney had told Dr. *Page 661 
Farmer that she suffered back pain was inadmissible as impeachment evidence.
An act of a witness that is inconsistent with the witness's present testimony is admissible as contradicting that testimony. McElroy's Alabama Evidence, § 155.02(3). Here, however, the fact that the witness had consulted Dr. Farmer is not an act inconsistent with her testimony. Consultation with a physician prior to being injured is not, in itself, inconsistent with a statement that the witness had never suffered a similar injury.
The fact that Dr. Farmer's notes would show that she complained of back pain at a time before the incident that is the basis of this action would establish a prior inconsistent statement by the witness and could be used to impeach her if the proper predicate had been laid. Dr. Farmer's notes could show that she complained of back pain only because she made to him a statement indicating that she was suffering back pain — a statement inconsistent with her present testimony. Although we have not before today dealt with the use of medical or business records for purposes of impeachment, we note that other courts have dealt with this question before, and that they likewise have held that a proper foundation must be laid for that use.
The Texas Court of Criminal Appeals has indicated that, although an offense report is admissible as a business record, it cannot be used to impeach a witness's testimony unless a proper foundation is laid for that use. Trussell v. State,585 S.W.2d 736, 738-39 (Tex.Crim.App. 1979).
 "If offered to impeach [the witness] Brown's identification [of the crime suspect at trial], evidence that Brown had earlier failed to pick appellant out of a lineup would in effect constitute evidence of a prior inconsistent statement by Brown. Appellant did not lay a proper foundation for impeaching Brown with the prior inconsistent statement by cross-examining Brown concerning the time, place, and circumstances of the pretrial identification, to allow Brown the opportunity to deny the prior inconsistent statement or explain the circumstances of its making. . . .
". . . .
 "Summarizing, although the offense report in question was admissible as a business record and could not be excluded on that ground alone, the portion of the report offered by appellant was not admissible to impeach Brown because appellant laid no foundation for its admission. . . ."
Id. (Citations omitted.)
Similarly, hospital records are admissible to impeach a witness when the proper foundation is laid for impeachment.Wursthorn v. Zolten, 186 N.E.2d 491, 493 (Ohio Ct. App. 1962) ("The records were also admissible for the purpose of impeachment" and "The foundation for their use for that purpose was properly laid in the cross-examination of the appellant.").See also Cheek v. State, 118 Ga. App. 385, 163 S.E.2d 856, 857
(1968) (court did not err in excluding evidence in police report offered as business record to impeach witness; failure of reporting officer to remember who made impeaching statement prevents laying of proper predicate, and thus precludes its admissibility for purposes of impeachment); Prince v. State,677 S.W.2d 181, 185-86 (Tex.Ct.App. 1984) (hospital record admissible as prior inconsistent statement for impeachment purposes where witness on cross-examination could not recall giving statement and no objection was made to its use); Palmerv. State, 158 Ga. App. 743, 282 S.E.2d 201, 202 (1981) (transcript of interview not admissible to attack the credibility of witness where witness was not cross-examined about her alleged statement contained in transcript and proper foundation was not laid for introduction of transcript as a business record). We adopt the reasoning of these jurisdictions that, when the impeachment evidence is contained within a business record and consists of prior inconsistent statements by the witness, the party offering that evidence must lay a proper predicate for it.
Third, WCI contends that, because it had less than two weeks' notice before trial to depose and prepare for cross-examination *Page 662 
of American's expert witnesses, Richard Henderson and Lt. Ben Garrett, the trial court erred in denying its motion to preclude their testimony, or, alternatively, to continue the case. "The decision whether to allow the testimony of such witness[es] is generally a matter within the sound discretion of the trial court and will not be reversed on appeal absent any abuse." Childs v. Huff, 586 So.2d 939, 940-41
(Ala.Civ.App. 1991). Childs upheld a trial court's decision to allow the testimony of an expert witness, even though the name of the witness had not been disclosed before trial, as directed in a pretrial order. Id. Rule 26(c), A.R.Civ.P., "vests the trial court with discretion in the discovery process" and "gives the court broad power to control the use of the process and to prevent its abuse by any party." Ex parte Dorsey Trailers,Inc., 397 So.2d 98, 103 (Ala. 1981) (citation omitted).
There is no merit to this third contention. Although we do not approve counsel's tardiness in releasing information regarding its expert witnesses in the case before us, we find no evidence that the trial court erred in admitting their testimony. Because there is no indication in the record that the trial judge abused his discretion by denying WCI's motion, and because the trial judge is in the best position to fully appraise the situation and the adverse impact, if any, on WCI, we conclude that the trial court did not err in denying WCI's motion.
WCI's fourth contention is that the jury's verdict was against the overwhelming weight of the evidence. The expert witnesses gave conflicting testimony as to the possible cause and point of origin of the fire in McKinney's basement. McKinney testified that, when she first discovered the fire, she saw flames coming out of the back of the clothes dryer. It was well within the province of the jury to decide which testimony to believe.
"A jury verdict is presumed to be correct, and this presumption is strengthened by the trial court's denial of a motion for a new trial. A judgment based on a jury verdict will not be reversed unless it is plainly and palpably wrong."Whisenant v. Nationwide Mut. Fire Ins. Co., 577 So.2d 909, 911
(Ala. 1991) (citations omitted). The jury heard conflicting expert testimony and the direct testimony of McKinney that she saw flames coming out of the clothes dryer. Each juror decided how much weight and credence to give to the testimony and other evidence adduced at trial, and the jury found for both plaintiffs. We cannot say, based on a careful review of the record, that the jury's verdict was plainly and palpably wrong.
WCI's final contention is that the $150,000 verdict for McKinney is excessive. We can find no evidence in the record to support this contention, especially in light of the trial court's denial of WCI's motion for a new trial, a judgment notwithstanding the verdict, or, alternatively, a remittitur.
Whether a jury award is excessive depends upon the facts of the particular case. Coca-Cola Bottling Co., Montgomery v.Parker, 451 So.2d 786, 788 (Ala. 1984). A trial court's refusal to order a new trial because of excessive damages is presumed to be correct and will not be reversed absent an abuse of discretion. See id. This presumption strengthens the validity of the award of damages. Given the facts of this case, the amount of the verdict does not seem shocking or excessive. After carefully considering the record, we cannot "find the amount allowed by the verdict [to be] so excessive as to plainly indicate it was produced by mistake, inadvertence, or failure to comprehend and appreciate the issues." Id.
The judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and ADAMS, HOUSTON, STEAGALL and INGRAM, JJ., concur.
MADDOX and KENNEDY, JJ., dissent.
[1] At a hearing on this issue, WCI's attorney stated, "I'm not going to be offering them [the medical records] for anything but quite frankly impeachment purposes." T.R. 441-42. Nothing in the record indicates that WCI meant to use these records as substantive evidence to mitigate the damages for personal injury claimed by McKinney. *Page 663