The appellant, Shirley Marie Kilgore, was convicted of manslaughter. She was sentenced to 20 years in prison.
The state's evidence tended to show that on the evening of November 9, 1991, the body of Lieutenant Godwin was discovered on the ground in the appellant's driveway next to the appellant's car. He had been shot in the right side of his chest with a .38 caliber gun. The shot had entered his upper abdomen and had hit his liver. Dr. Alfredo Paredes with the state forensics department testified that Godwin bled to death as a result of the gunshot wound.
Sergeant Curtis Howell of the Houston County Sheriff's Department was called to the scene of the shooting. He found Godwin on the ground and the appellant standing in the yard with a gun in her hand. She said to Howell, "I shot him, I done it."
Zaness Weatherington testified that he was with the victim and the appellant on the night of the shooting. He said that he, the appellant, the victim, and several other people went to a bar in Madrid, Alabama. They later returned to the appellant's house in separate vehicles. Weatherington testified that the appellant and the victim drove to the appellant's house in the appellant's truck. Weatherington said that when he arrived he *Page 1017 
went in the house and that the victim and the appellant stayed outside. About 15 minutes later, Weatherington said he heard a gunshot. He saw the victim lying at the back of one side of the appellant's vehicle and the appellant standing at the front of the other side of the truck. According to Weatherington, the appellant also had blood coming from her mouth.
Jacqueline Brown testified that she was also with the appellant and the victim on the night of the shooting. She stated that the appellant and the victim had been arguing in the truck. At trial she testified that when she arrived at the appellant's house she went inside. In a prior statement to police she said that she took the appellant's purse into the house because it was in the car she had been riding in. In that same statement, she also said that after several minutes the appellant came into the house, got a gun out of her purse, and said that she was tired and that the appellant was not going to "run her away from her children" anymore. In this prior statement Brown said that the appellant took the gun and went outside and that she then heard a "bam."
The victim's clothes were examined by employees of the forensics department. No powder residue was found on any of his clothing. A forensics expert testified that the person shooting the gun was at least 30 to 40 inches or more from the body when the shot was fired.
The appellant testified at trial that the victim had been drinking the entire evening of the shooting. She said that on that evening he hit her in the mouth and "busted" her lip and that the force of the blow broke one of her teeth. She said that he also threatened her. She said that she and the victim were arguing and that he got out of her truck. She locked the doors and started the engine. After more arguing, the appellant got out of the truck. She stated that she started towards the house with her purse in her hand when the victim started walking towards her. She said that she was afraid of Godwin and that she grabbed the gun out of her purse and turned around and shot him. There was no evidence that the victim was armed with a gun or that he had any kind of a weapon when he was shot.
Officer Howell testified that he did not see any cut on the appellant's lip on the night of the shooting and that she did not complain to him of any injury to her lip.
 I
The majority of the issues raised by the appellant center around the trial court's ruling that self-defense was not applicable to the facts of this case. Specifically, she contends that the court erred in ruling that the issue of self-defense was not a jury question.
Alabama's statutory law on self-defense is found in §13A-3-23, Code of Alabama 1975. This section states, in pertinent part:
 "(a) A person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for the purpose. A person may use deadly physical force if the actor reasonably believes that such other person is:
 "(1) Using or about to use unlawful deadly physical force. . . .
". . . .
 "(b) . . . a person is not justified in using deadly physical force upon another person if it reasonably appears or he knows that he can avoid the necessity of using such force with complete safety:
 "(1) By retreating, except that the actor is not required to retreat:
 "a. If he is in his dwelling or at his place of work and was not the original aggressor. . . ."
The appellant herself testified at trial that part of the time she was verbally arguing with Godwin, she was in her truck with the doors locked and with the motor running. The court based its ruling that self-defense was inapplicable on this testimony and stated that the appellant could have retreated while she was in the vehicle with the motor running. The court also stated that the appellant could have retreated into the house, *Page 1018 
which was a few feet away, and closed the door.
However, the appellant was in the yard of her house when the shooting occurred. The appellant was under no duty to retreat because she was within the curtilage of her home. Madry v.State, 201 Ala. 512, 78 So. 866 (1918).
 "[A] person assailed is not bound to retreat from his own dwelling to avoid killing his assailant, even though a retreat could be safely made. Brinkley v. State, 89 Ala. 34, 8 So. 22, 18 Am.St.Rep. 87. And this doctrine is applied to the curtilage, or such space as is customarily occupied by the dwelling house and out buildings appurtenant thereto."
Madry, 78 So. at 868. Here, the appellant's truck was directly in front of the appellant's house and therefore was within the curtilage of the appellant's dwelling. Section 13A-3-23, Code of Alabama 1975. Thus, the court's finding that self-defense was inapplicable to the facts of the case because the appellant could have retreated was erroneous.
However, we will affirm a lower court if the court's ruling is correct for any reason, even if the lower court based its ruling on a wrong reason. Our examination of the facts indicate that the victim was unarmed and apparently had no weapon. The evidence shows that there was nothing to indicate that the victim was using or was about to use "unlawful deadly physical force." Section 13A-3-23.
The appellant testified that the appellant was coming towards her at the time of the shooting. She said that she did not see any weapon in his hand when he was approaching her. Indeed, no weapon was found on the victim's body.
There was evidence that the appellant may have suffered a hand injury to the mouth. However, as the state correctly argues: "As a general rule, the accused is not entitled to have his claim of self-defense submitted to the jury if the undisputed evidence shows clearly . . . that the accused was not in actual or apparent imminent peril. . . ." McElroy'sAlabama Evidence § 457.02(5)(5).
 "Fisticuff blows do not, as a rule, inflict the grievous bodily harm which, other means of escape being cut off, will excuse the slaying of the assailant. 'When a man is struck with the naked hand, and has no reason to apprehend a design to do him great bodily harm, he must not return the blow with a dangerous weapon.' Shorter v. People, 2 N.Y. 194. 'A mere assault, however, not directed at life or chastity or other high right, cannot excuse homicide. Hence, if a deadly weapon be not used by the assailant, or other circumstances do not exist to indicate a felonious attempt, for the assailed to take li[f]e is at least manslaughter.' 1 Whart.Crim.Law, § 484."
Scales v. State, 96 Ala. 69, 11 So. 121, 124 (1892). " 'There must be some demonstration, or apparent demonstration, of an intent, coupled with ability, to take life or inflict grievous bodily harm, before extreme measures become defensive, and can be resorted to.' Karr v. State, 100 Ala. 4, 14 So. 851, 852
(1894)." Raines v. State, 455 So.2d 967, 972 (Ala.Cr.App. 1984). Further, to invoke the doctrine of self-defense the party must be "entirely free" from fault. Shack v. State, 236 Ala. 667,184 So. 688, 689 (1938). From the facts of this case, the appellant was not entirely free from fault. We agree with the court's findings in Raines:
 "[W]e are of the opinion that the evidence, when viewed in the light most favorable to [the appellant], is not sufficient to warrant the conclusion as a matter of law, that at the time [the appellant] intentionally fired the fatal shot, either he or others were in actual or apparent impending peril of losing their life or of suffering grievous bodily harm."
455 So.2d at 974.
The appellant also contends that the court erred in failing to instruct the jury on self-defense. "A court should not instruct on self-defense when there is no evidence to sustain the plea . . . or when the defendant's evidence showed that he did not act in self-defense." Raines v. State, 455 So.2d 967,974 (Ala.Cr.App. 1984). See also Fuller v. State, 620 So.2d 669
(Ala.Cr.App. 1991), aff'd, 620 So.2d 675 (1993). An instruction on self-defense *Page 1019 
was not justified under the facts as presented in this case.
The appellant further contends that the court erred in not allowing her to present evidence of the victim's bad general reputation and of the threats that he had made to the appellant. The court disallowed any evidence of reputation because the appellant had failed to make a showing that the killing was in self-defense. The court's ruling was correct. As stated in McElroy's Alabama Evidence:
 "The victim's bad general reputation for peace and quiet, violence or like trait is admissible only if the evidence before the trial court, at the time such general reputation is offered, tends to show that the accused acted in self-defense."
C. Gamble, McElroy's Alabama Evidence § 33.01(2) (4th ed. 1991).
The court did allow the appellant to show that the victim had threatened her on one previous occasion. However, the court would not allow the appellant to put into evidence any other threats that the victim had made to her.
 "In a charge of homicide or assault, the accused may prove a threat by the victim against him as tending to show that the victim was the aggressor. Such a threat, however, can only be proven after the accused has introduced evidence warranting a finding by the jury that he acted in self-defense."
McElroy's Alabama Evidence § 44.02(2). The court's ruling was correct.
 II
The appellant next contends that the trial court erred in denying her Batson[1] motion. Specifically, the appellant contends that the trial court erred in ruling that she had not established a prima facie case of discrimination. The United States Supreme Court in Batson held that the Equal Protection Clause of the United States Constitution prohibits the removal of blacks from a black defendant's jury solely on the basis of race. This ruling was later extended to white defendants.Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411
(1991). Batson was also extended to civil litigants inEdmondson v. Leesville Concrete Co., 500 U.S. 614,111 S.Ct. 2077, 114 L.Ed.2d 660 (1991). Batson has also been applied to defense counsel. Georgia v. McCollum, ___ U.S. ___,112 S.Ct. 2348, 120 L.Ed.2d 33 (1992); Lemley v. State, 599 So.2d 64
(Ala.Cr.App. 1992). Recently the Alabama Supreme Court held that the protections of Batson also apply to white prospective jurors. White Consolidated Industries, Inc. v. American LibertyInsurance Co., 617 So.2d 657 (Ala. 1993). See also Williams v.State, 634 So.2d 1034 (Ala.Cr.App. 1993).
The party making a Batson objection must initially establish a prima facie case of discrimination. Batson,476 U.S. at 93-94, 106 S.Ct. at 1721.
 "A defendant must offer some evidence in addition to the striking of blacks that would raise an inference of discrimination. When the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created. Logically, if statistical evidence may be used to establish a prima facie case of discrimination, by showing a discriminatory impact, . . . then it should also be available to show the absence of a discriminatory purpose."
Harrell v. State, 571 So.2d 1270, 1271-1272 (Ala. 1990), cert. denied, 499 U.S. 984, 111 S.Ct. 1641, 113 L.Ed.2d 736 (1991).
The following occurred when defense counsel made aBatson objection:
 "The Court: How many black people were on the strike panel?
 "Mr. Hudgins [Defense Counsel]: If I am correct, Judge, we are left with three blacks on the jury venire — on the actual panel that will serve as jurors.
 "The Court: Okay. And I will take judicial notice that this is a jury of twelve people, that therefore twenty-five percent of the jury as impaneled are black people. I will take judicial notice that the most recent census suggests that the black population *Page 1020 
in Houston County is somewhere between twenty and thirty percent of the population of the entire county.
 "I will also take judicial notice of your list of State strikes to the extent that it shows that there were eleven peremptory challenges available to the State. It is unquestionably clear from a consideration of those numbers that had the State chosen to exercise its strikes in a racially discriminatory manner, it could have struck all black people from the panel and still had strikes left over. Based on those considerations, I find that the defense has failed to make a prima facie case for exercise of peremptory challenge in a racially discriminatory manner.
 "I therefore decline to ask the State for any explanation as to the basis on which it exercised its right to peremptory challenge."
The record reflects that three black jurors served on the jury. Defense counsel stated before the court's ruling on his motion that the state had struck three blacks from the venire panel. Defense counsel failed to offer any evidence of discrimination other than the fact that the state struck three blacks. There is absolutely no indication in the record of how many blacks sat on the venire. We do know from the court's comments that the state had 11 peremptory strikes. It appears from the scant record before us that a greater percentage of blacks sat on the jury than sat on the venire. This court has held that when a greater percentage of blacks sit on the jury than were on the venire, no prima facie of racial discrimination in the selection of the jury has been established. Nelson v. State, 623 So.2d 432 (Ala.Cr.App. 1993). See also United States v. Forbes, 816 F.2d 1006 (5th Cir. 1987).
We must conclude, based on the scant record before us, that the trial court correctly found that no prima facie case of discrimination had been established.
" 'This court "cannot presume the existence of facts of which the record is silent and make it a ground for reversal."Dais v. State ex rel. Davis, 420 So.2d 278, 279
(Ala.Civ.App. 1982).' Keasler v. Hampton, 568 So.2d 1242, 1243
(Ala.Civ.App. 1990)." Stegall v. State, 628 So.2d 1006 (Ala.Cr.App. 1993). " 'Where the record is silent on appeal, it will be presumed that what ought to have been done was not only done, but rightly done.' " Jolly v. State, 405 So.2d 76
(Ala.Cr.App. 1981).
 III
The appellant further contends that the trial court committed reversible error by not granting her motion in limine, requesting that certain photographs not be allowed in evidence at trial because the photographs had not been given to the defense during discovery.
The record does not contain the motion initially filed by defense counsel. The record contains the following order on the case action summary sheet:
 "The State is ordered to produce within 14 days at the District Attorney's office for Defendant's inspection and copying all statements, documents, tangible objects, reports of examinations and tests or other items required under Alabama Rules of Criminal Procedure and any other exculpatory matter."
The appellant, about three days before trial, filed a motion in limine arguing that the photographs should be suppressed at trial because, she argued, they were never given to the defense in discovery. This motion in limine was the first mention in the record of the photographs. The record contains no ruling on the motion in limine and, indeed, we know no details concerning the prosecution's compliance with the discovery order. The record is absolutely silent concerning the circumstances surrounding this motion. As previously stated, this court cannot reverse a judgment on an issue as to which the record is silent. Stegall, supra.
Furthermore, Rule 16.1(c), A.R.Crim.P., states, in pertinent part:
 "Upon written request of the defendant, the prosecutor shall, within fourteen (14) days after the request has been filed in court as required by Rule 16.4(c), or within such shorter or longer period as may be ordered by the court, on motion, for good cause shown, permit the defendant to analyze, *Page 1021 
inspect, and copy or photograph books, papers, documents, photographs, tangible objects, controlled substances, buildings or places, or portions of any of these things, which are within the possession, custody, or control of the state/municipality and:
 (1) Which are material of the preparation of defendant's defense; provided, however, that the defendant shall not be permitted to discover or to inspect reports, memoranda, witness lists, or other internal state/municipality documents made by the prosecutor or the prosecutor's agents, or by law enforcement agents in connection with the investigation or prosecution of the case. . . ."
(Emphasis added.)
The only photograph that had any bearing on the defense was a photograph taken on the night of the shooting of the appellant's face, which did not show any injuries. This photograph was introduced after two officers testified that the appellant's lip did not appear to be "busted" when they saw her directly after they were called to the scene of the shooting. The photograph was cumulative of the officers' trial testimony and its receipt into evidence was not error.
The appellant also contends that the physical evidence collected from the crime scene should have been suppressed because, she says, she was not allowed to inspect these items pursuant to a discovery order. However, there is no evidence in the record to support this assertion. This matter was also made the subject of the motion in limine. However, as stated above, there was no ruling on the motion. Under these circumstances we find no error. Stegall, supra.
 IV
Last, appellant argues that the trial court erred in not allowing her to argue at her sentencing hearing the range of sentence she should receive. On appeal, the appellant contends that this conduct violated Rule 26.6(b)(2), A.R.Crim.P. This specific objection was not made at the time of the sentencing. This issue was not preserved for purposes of appeal.Johnson v. State, 479 So.2d 1377 (Ala.Cr.App. 1985).
For the foregoing reasons, the judgment this cause is due to be affirmed.
AFFIRMED.
All the Judges concur.
[1] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986).