The appellant, Robert Lee Tarver, Jr., appeals from the circuit court's dismissal *Page 339 
of his petition for postconviction relief filed pursuant to Rule 32, Ala.R.Crim.P. Tarver was convicted and sentenced to death and is scheduled to be executed in Alabama's electric chair on April 14, 2000. Notice of appeal was forwarded to this Court on April 13, 2000.
In 1985, Tarver was convicted of murdering Hugh Sims Kite during the course of a robbery. He was sentenced to death. Tarver's conviction and sentence were affirmed on direct appeal. Tarver v. State, 500 So.2d 1232
(Ala.Cr.App.), aff'd, 500 So.2d 1256 (Ala. 1986), cert. denied,482 U.S. 920 (1987). In 1987, Tarver filed his first postconviction petition. As a result of this petition, the trial court denied relief as to his conviction but ordered that a new sentencing hearing be held. Both the State and Tarver appealed. We affirmed that part of the trial court's judgment related to Tarver's conviction, reversed that part of the judgment that ordered a new sentencing hearing and remanded the case to the trial court for that court to correct its order to comply with our opinion. State v. Tarver, 629 So.2d 14 (Ala.Cr.App. 1993), cert. denied,511 U.S. 1078 (1994). In 1995, Tarver filed a habeas corpus petition in federal court. That petition was denied; the United States Court of Appeals for the Eleventh Circuit affirmed the lower court's ruling. Tarverv. Hopper, 169 F.3d 610 (11th Cir. 1999). On January 21, 2000, Tarver filed his second postconviction petition — 21 days before he was scheduled to be executed on February 4, 2000. That petition was denied; we affirmed the trial court's denial. Tarver v. State, [Ms. CR-99-0820, February 2, 2000] 761 So.2d 266 (Ala.Cr.App. 2000). On February 3, 2000, the United States Supreme Court stayed Tarver's execution.[1]
That stay was later vacated by the Supreme Court. Tarver v. Alabama, ___ U.S. ___, 120 S.Ct. 1223 (2000). Tarver's execution was rescheduled for April 14, 2000. On April 6, 2000, eight days before Tarver's date of execution, Tarver filed a third postconviction petition. That petition was dismissed by the trial court. On April 12, 2000, this Court received the briefs of the parties to this appeal. Tarver has also moved that we stay his execution.
In Tarver, 500 So.2d 1232, this Court recited the facts underlying Tarver's capital murder conviction. We stated in part:
 "Andrew Richardson testified that the appellant came to his house at 8:00 p.m. (Central time) on the evening of September 15, 1984. The appellant asked Richardson to go for a ride and said he wouldn't be gone long. He stated he had some business to do with a white man.
 "The appellant had with him some coveralls, a wig and a stocking mask. He put on these items and asked Richardson if he would fool anyone. The two then left Richardson's house in the appellant's Chevrolet. The appellant drove down Highway 165 and passed Kite's Store. They drove to ML's Club where Richardson went inside to find his brother.
 "When Richardson returned to the car, the appellant drove back down Highway 165 and turned off into a pasture. The appellant drove down a dirt road and then backed up the car and headed it towards the highway.
 "The two sat and talked for a while. The appellant was drinking a Budweiser beer at this time.
 "At some point, the appellant told Richardson that he hated to do it but he had to, and told Richardson to take his car home and park it if he didn't come back.
 "The appellant then got out of the car and put on the wig and mask. He then headed towards Kite's Store. Approximately five to 10 minutes after the appellant *Page 340 
left, Richardson heard three shots. Although scared, Richardson remained at the car until the appellant returned.
 "When the appellant got back to the car, he did not have the mask or the wig. He told Richardson to drive after he got in the passenger seat. As Richardson was driving, the appellant told him to stop. The appellant then left his clothes in some bushes.
 "When the appellant got back to the car, he told Richardson that he had messed up and killed the victim.
 "Richardson then drove to his house. The appellant counted some money and gave Richardson $80. He stuck the gun in the inside arm of the couch in Richardson's house."
Tarver argued in his third postconviction petition that he is entitled to a new trial because newly discovered evidence reflects that the district attorney who prosecuted his case in 1985 violated the United States Supreme Court's holding in Batson v. Kentucky, 476 U.S. 79
(1986),[2] by striking black prospective jurors because of their race. (Tarver was tried over one year before the Batson decision was released.) The newly discovered evidence — an affidavit signed by former Russell County assistant district attorney Mark Carter — states the following, "the prosecution did consider race in the exercise of peremptory strikes at Mr. Tarver's trial. It was our belief at that time that black people would not be as favorable to the State as white jurors and consequently we excluded black prospective jurors with peremptory strikes."
The State filed a motion to dismiss in the trial court arguing that this issue is procedurally barred because a Batson claim was raised in Tarver's 1990 postconviction petition, this petition is successive, this petition is filed outside the two-year limitations period set in Rule 32.2(c), Ala.R.Crim.P., the allegations in the present petition fail to meet the definition of newly discovered evidence contained in Rule 32.1(e), Ala.R.Crim.P., and the petition fails to assert a material issue of fact, Rule 32.7(d).
The trial court when denying the petition stated:
 "Tarver contends that the Carter affidavit he included with his second successive Rule 32 petition establishes grounds that contain newly discovered material facts to overcome this claim being procedurally defaulted. To establish that a fact is newly discovered, Tarver must prove all five requirements listed in Rule 32.1(e)(1)-(5), Ala.R.Crim.P.[3] Tarver does not meet the five requirements to *Page 341 
establish that Carter's affidavit establishes newly discovered material facts.
 "The first requirement listed for showing grounds for a claim are `newly discovered material facts' are that the `facts relied upon were not known by petitioner or petitioner's counsel . . . in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through reasonable diligence.' Rule 32.1(e)(1), Ala.R.Crim.P. The affidavit of Mark Carter that is included with the State's answer and labeled Appendix `A', unequivocally states that if he [had] been approached during the initial Rule 32 proceedings litigated in 1990-1992, his testimony would have been similar to his affidavit. Carter was available to testify in the early 1990's during the initial Rule 32 proceedings, however, Tarver did not contact Carter. Thus, facts contained in Carter's affidavit could have been discovered through the exercise of reasonable diligence to present at the initial Rule 32 proceedings. Contrary to Tarver's contention, the test is not whether Carter approached Tarver's counsel several months ago about the facts contained in the affidavit, but rather whether the information contained in Carter's affidavit could have been discovered in 1990-1992 through the exercise of reasonable diligence. Tarver fails to meet the Rule 32.1(e)(1) requirement to prove a `newly discovered material fact.'
 "Finally, and most significantly, Tarver cannot meet the requirements of Rule 32.1(e)(5), as the affidavit presented by Tarver, and the allegations based thereon, do not in any way indicate that he is innocent of the crime for which he was convicted in 1985 or that he should not receive a sentence of death. Nowhere in his petition does Tarver assert that any facts contained in Carter's affidavit establish his factual innocence.
". . . .
 "In the Carter affidavit included with the State's answer Carter admits to having no specific recollection as to the jury selection and striking process at Tarver's 1985 trial. Carter only makes reference to a vague policy that race played a role in jury selection when he was an Assistant District Attorney, although he cannot recall how he came to understand how this policy existed or who told him about the race-based jury striking policy. See Appendix `A' to State's answer at paragraph 7. Perhaps most importantly, Carter admits to having no specific recollection as to the jury selection and striking process in the Tarver case. See Appendix `A' to State's answer at paragraph 6."
We agree with the trial court's conclusions. This allegation fails to meet the definition of newly discovered evidence recited in Rule 32.1(e), Ala.R.Crim.P. Tarver has not argued that he is innocent, Rule 32.1(e)(5), nor has he satisfied the other requirements of Rule 32.1(e). We have repeatedly stated that before claims may be considered as newly discovered evidence the claims must meet the definition of newly discovered evidence contained in Rule 32.1(e). See Siebert v. State, [Ms. CR-98-0868, December 30, 1999] ___ So.2d ___ (Ala.Cr.App. 1999);Brown v. State, [Ms. CR-98-0343, October 1, 1999] ___ So.2d ___ (Ala.Cr.App. 1999); Callahan v. State, [Ms. CR-97-1202, April 30, 1999]767 So.2d 380 (Ala.Cr.App. 1999); Boyd v. State, [Ms. CR-96-2295, March 26, 1999] 746 So.2d 364 (Ala.Cr.App. 1999); Pierce v. State, [Ms. CR-96-1668, March 2, 1999] ___ So.2d ___ (Ala.Cr.App. 1999); King v.State, 729 So.2d 366 (Ala.Cr.App. 1998); Burton v. State, 728 So.2d 1142
(Ala.Cr.App. 1998); Hill v. State, 695 So.2d 1223 (Ala.Cr.App. 1997).
More importantly, the trial court's dismissal of this petition was correct because the petition failed to present a material issue of fact. As Rule 32.7(d) states:
 "If the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief *Page 342 
under this rule and that no purpose would be served by any further proceedings, the court may either dismiss the petition or grant leave to file an amended petition. . . ."
Here, the affidavits filed by both Mark Carter and District Attorney Kenneth Davis clearly reflect that there is no material issue of fact presented in this petition.
The State, with its motion to dismiss, attached a second affidavit filed by Mark Carter which contains more details than the affidavit attached with Tarver's petition. In this later affidavit Carter states the following:
 "My affidavit is based upon my belief that race played a role in selecting juries back during the time of Tarver's trial. As for Tarver's capital murder trial, I have no specific recollection as to the striking of that particular jury. At this time, I cannot recall any specifics as to the striking of Tarver's jury.
 "My belief is that race played a role in all jury selections at the time of this trial. I believe that this was an understood practice at the time, although I cannot say that it was an official policy. Ken Davis never told me that any strikes were made on the basis of race. I never told Ken Davis to exercise strikes on the basis of race. I really cannot recall how I came to understand that this policy existed. I cannot recall that a specific person in the District Attorney's office ever told me about a race-based jury striking policy. I can do nothing more than characterize it as a routine, understood practice.
 "The Russell County District Attorney's office has never had an official policy encouraging strikes based on or motivated by a potential juror's race. There is no office manual that encourages assistant district attorneys to make race-based strikes during jury selection. To my knowledge, no one has ever had race-based jury strikes required as a condition of employment for the Russell County District Attorney's Office. My affidavit stems from the belief that racially motivated strikes are an institutional, unspoken policy.
 "Ken Davis was the District Attorney of Russell County during Tarver's trial, and I was an Assistant District Attorney. As such, the final authority over the exercise of strikes in this particular case rested with Ken Davis. Because I have no specific recollection of this particular case, I could not contradict Ken Davis if he asserted that there were race-neutral grounds contributing to each strike."
(Emphasis added.) Attached to the State's motion to dismiss is also an affidavit executed by District Attorney Kenneth Davis which states in part:
 "In regards to jury selection, my practice at the time of the Tarver trial, just as it is today, is to distribute the jury venire list to members of my staff, law enforcement personnel, and the victim's family. I do this to obtain information about each individual prospective juror that I can use to help me strike a jury that will fairly try the case. At the time of the Tarver trial, just as I do today, I would have used information obtained from passing out the jury venire list to the categories of persons previously listed. Therefore, my reasons for striking prospective jurors might not be evident from reading the record of the voir dire in this case.
 "This case did not present a situation where there was a racially charged atmosphere in the local community. As a matter of fact, most of the fact witnesses who testified against Tarver were black persons. The main witness against Tarver was the co-defendant, Andrew Richardson, a black man. Esther Dennis, a black woman, testified that she loaned a pistol to Tarver on the day of the murder. This pistol was later proven by ballistics evidence to be the murder weapon. Bossie Lee Edmond, a friend of Tarver's who is a black person, testified that the day after the murder he saw Tarver with a lot of money. Jerry Ford, the ten year old youth who was at the store when Mr. Kite was murdered, is black. I believe it is safe to say that, *Page 343 
without the testimony of these persons who all happen to be black, I could not have secured a capital murder conviction against Tarver.
 "Yesterday, I read an affidavit from Mark Carter that was presented with Tarver's Rule 32 petition. Carter was an Assistant District Attorney who assisted me during some parts of the Tarver case. Soon after the trial of this case, Carter left my office and went into private practice with Thomas Estes, Tarver's original trial counsel. I have read the following passage in Carter's affidavit: `It was our [presumably a reference to my office] belief at that time that black people would not be as favorable to the State as white jurors and consequently we excluded black prospective jurors with peremptory strikes.' If Carter made any assumptions about black prospective jurors, those were his own beliefs and not mine."
Carter stated in his second affidavit that he did not have the "final authority" in striking the jury for Tarver's trial but he only assisted District Attorney Kenneth Davis. District Attorney Davis, who has been District Attorney for Russell County for 26 years, states in his affidavit that he struck Tarver's jury and he did not strike any person based on their race. He also stated that it was not a policy of his office to exercise peremptory strikes based on the race of the prospective juror.
There was no material issue of fact presented and the trial court correctly dismissed this postconviction petition because it failed to state a claim that would entitle Tarver to relief. Rule 32.7(d), Ala.R.Crim.P. Further, Tarver's motion for a stay of execution is due to be denied.
AFFIRMED; MOTION FOR STAY OF EXECUTION DENIED.
Long, P.J., and McMillan, Cobb, Baschab, and Fry, JJ., concur.
[1] The issue presented in this second petition was whether Alabama's method of execution — the electric chair — constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.
[2] The United States Supreme Court in Batson held that the Equal Protection Clause of the United States Constitution prohibits the removal of blacks from a black defendant's jury solely on the basis of their race. This ruling has been extended to defense counsel, Georgia v.McCollum, 505 U.S. 42 (1992), and to white prospective jurors, WhiteConsolidated Industries, Inc. v. American Liberty Insurance Co.,617 So.2d 657 (Ala. 1993).
We note that Tarver, in this Rule 32 petition, states that defense counsel admitted at a prior postconviction hearing that he would have struck all the white prospective jurors because, "if I could have insured that the majority of the jurors in this case would have been black, I would have done so."
[3] Rule 32.1(e), Ala.R.Crim.P., states that evidence is newly discovered when:
 "(1)The facts relied upon were not known by petitioner or petitioner's counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence;
 "(2) The facts are not merely cumulative to other facts that were known;
 "(3) The facts do not merely amount to impeachment evidence;
 "(4) If the facts had been known at the time of trial or of sentencing, the result probably would have been different; and
 "(5) The facts establish that petitioner is innocent of the crime for which petitioner was convicted or should not have received the sentence that petitioner received."