The appellant, Naserie Saccar Jackson, was convicted of murder, a violation of § 13A-6-2(a)(1), attempted murder, a violation of § 13A-4-2 and § 13A-6-2, Ala. Code 1975, and attempted assault in the first degree, a violation of § 13A-4-2, and § 13A-6-20, Ala. Code 1975. He was sentenced as a habitual offender to life imprisonment on each of the three convictions, the sentences to be served concurrently. On appeal, Jackson challenges only his conviction for attempted murder.
Jackson argues the trial court erred in failing to instruct the jury that, because the altercation between the victim, Abe Gilchrist, and him occurred at his own house, the self-defense-related "duty to retreat" had no applicability to his case.
Alabama's statutory law on self-defense is found in § 13A-3-23, Ala. Code 1975.[1] This section states, in pertinent part:
 "(a) A person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he reasonably believes to be necessary for the purpose. A person may use deadly physical force if the actor reasonably believes that such other person is:
 "(1) Using or about to use unlawful deadly physical force.
 ". . . .
 "(b) . . . [A] person is not justified in using deadly physical force upon another person if it reasonably appears or he knows that he can avoid the necessity of using such force with complete safety;
 "(1) By retreating, except that the actor is not required to retreat:
 "a. If he is in his dwelling or at his place of work and was not the original aggressor. . . .
 ". . . .
 "(c) Notwithstanding the provisions of subsection (a), a person is not justified in using physical force if:
 "(1) With intent to cause physical injury or death to another person, he provoked the use of unlawful physical force by such other person. . . ."
The evidence presented by the State tended to show the following: On August 11, 2005, Abe Gilchrist's seven-year-old daughter was visiting him for the weekend. Gilchrist asked his daughter how she liked Jackson, who had moved in with her mother, Gilchrist's ex-wife. His daughter replied that she did not like the fact that Jackson told her what to do and that he sometimes spanked her. This conversation angered Gilchrist, who telephoned his ex-wife and Jackson to express his anger. After speaking to his ex-wife, Gilchrist spoke to Jackson, who denied any wrongdoing. After repeated accusations by Gilchrist, Jackson told him to "come on over" if he had anything further to say to him. Meanwhile, in anticipation of Gilchrist's arrival, Jackson hid a pistol in a flowerpot on his front porch and told a group of young men, with whom he had been playing basketball in his front yard, "to stay put and let him handle it," if Gilchrist showed up. The same day, Gilchrist telephoned a friend, Alfred Chestang, and asked him to drive him over to his ex-wife's residence; Chestang agreed to do so. Upon arriving at the residence, Gilchrist and Jackson got into a fistfight. Although there was no evidence indicating that Gilchrist was *Page 47 
armed with a gun or any kind of weapon, Jackson retrieved the gun he had hidden on his front porch and began shooting at Gilchrist, hitting him twice. Jackson continued to fire in the air as Gilchrist ran down the street. Jackson then fired toward Chestang, but missed him. A stray bullet hit Jamal Stegner, one of the neighborhood children who happened to be playing in an adjacent backyard, killing him.
The record indicates that during a charge conference, defense counsel requested that an instruction on self-defense be given with regard to the attempted murder of Abe Gilchrist. Although the trial court instructed the jury on self-defense as it related to the offense of attempted murder, its instruction was inadequate. Specifically, the trial court instructed the jury that Jackson could use deadly physical force in order to defend himself from what he reasonably believed to be the use or the imminent use of unlawful physical force by another person. The trial court further instructed the jury that Jackson was not justified in using deadly physical force upon another person and could not prevail on the issue of self-defense, if it reasonably appeared or the defendant knew that he could avoid the necessity of using such force with complete safety by retreating. At the close of the jury instructions, defense counsel objected to the trial court's failure to give an instruction regarding the nonapplicability of the duty to retreat if Jackson was in his dwelling or at his place of work and was not the original aggressor. The trial court overruled the objection, stating: "I considered that and correctly or incorrectly as I read it, it says, `If he is in his dwelling.' He was not in his dwelling and that's why I did not give it."
As the State acknowledges in its brief, Jackson was not required to retreat while defending himself against an attack in the curtilage of his home, i.e., the front yard. SeeKilgore v. State, 643 So.2d 1015, 1018
(Ala.Crim.App. 1993) (the appellant was under no duty to retreat because she was within the curtilage of her home, i.e., her yard). Therefore, the trial court's finding that the appellant could have retreated "into" his dwelling was an incorrect statement of law. The State argues, however, that the jury could have found, based on the trial court's additional instruction, that Jackson was not entirely free from fault. Therefore, the State argues, the failure to give the requested instruction was, at worst, harmless error. Rule 45, Ala. R.App. P. The problem with the State's argument, however, is that the trial court failed to give an instruction regarding "freedom from fault." More particularly, the trial court failed to instruct the jury that a person is not justified in using deadly physical force if, with intent to cause physical injury or death to another person, he provoked the use of unlawful physical force by such other person. There was evidence presented by the State indicating that Jackson was not free from fault, i.e., he told Gilchrist to "come on over," knowing that Gilchrist was angry about the situation; he informed the young men playing basketball in his yard "to stay put and let him handle [Gilchrist]"; he hid a gun in a flowerpot in anticipation of Gilchrist's arrival; and he engaged in a fistfight with what appeared to be an un-armed man and eventually fired a gun, knowing that Gilchrist was unarmed.
Generally, the party invoking the doctrine of self-defense must be "entirely free" from fault. See Kilgore,643 So.2d at 1018. The trial court, however, found some evidence to support Jackson's self-defense theory. See Williams v.State, 938 So.2d 440, 445 (Ala.Crim.App. 2005), *Page 48 
quoting Ex parte McGriff, 908 So.2d 1024, 1035
(Ala. 2004), quoting in turn other cases ("`"`It is a basic tenet of Alabama law that "a party is entitled to have his theory of the case, made by the pleadings and issues, presented to the jury by proper instruction, . . . and the [trial] court's failure to give those instructions is reversible error."'"'").
We cannot agree with the State that the trial court's failure to give a complete instruction on self-defense was harmless error. Based upon the trial court's erroneous instruction on the element of retreat, the jury could have found that Jackson had an absolute duty to retreat, having been uninformed of the qualified duty as it related to Jackson's dwelling. Not only did the trial court give an incorrect charge regarding Jackson's duty to retreat, it completely failed to give the third portion of the self-defense instruction regarding "freedom from fault." Therefore, we cannot say that the jury could have rejected Jackson's self-defense claim based on the element of fault.
Because Jackson does not challenge his convictions for the murder of Jamal Stegner and the attempted assault of Alfred Chestang, those convictions are affirmed. Because, however, the trial court gave both an incorrect and an inadequate jury instruction on self-defense regarding the attempted murder of Abe Gilchrist, Jackson's conviction of attempted murder is reversed and the cause remanded for a new trial.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
BASCHAB, P.J., and SHAW and WELCH, JJ., concur. WISE, J., dissents, without opinion.
[1] Section 13A-3-23 was amended effective June 1, 2006. The pre-amendment version is applicable in this case.